Mary Connolly, Conservatrix of Estate of Arthur P. Connolly, Incompetent, Appellant, v. Robert B. Upham et al., Appellees.

Gen. No. 44,862.

Opinion filed April 13, 1950. Rehearing denied April 26, 1950. Released for publication April 26, 1950.

EUGENE P. MEEGAN, of Chicago, for appellant; WILLIAM N. BRADY, of Chicago, of counsel.

BENJAMIN S. ADAMOWSKI, Corporation Counsel, for appellees; GEORGE F. MULLIGAN, JR., Assistant Corporation Counsel, of counsel.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

On January 11, 1949, petitioner filed a petition for certiorari to review and set aside an order of the Retirement Board of the Firemen's Annuity and Benefit Fund, allowing her ward, Arthur P. Connolly, incompetent, a retirement annuity based upon approximately 17 years of service in the fire department, and denying him the full retirement annuity which she claimed for him and which may be allowed to firemen who have completed 20 years of service and attained the age of 50 years. The court allowed respondents' motion to strike the petition and dismissed the suit on the ground that petitioner was guilty of laches in allowing four years to intervene between the entry of the order sought to be reviewed and the filing of the petition for certiorari. Petitioner appeals.

It appears from the petition that Connolly was born March 3, 1894, joined the fire department on March 18,

388

1922, became a lieutenant therein on August 16, 1929, and continued in the fire service until on December 21, 1939, he was adjudged by the county court of Cook county to be insane. He was ultimately confined in the Veterans Hospital at Downey, Illinois, and discharged as cured on March 13, 1943. During the period of his confinement in the hospital, respondents, at a meeting held on January 24, 1940, erroneously granted him ordinary disability benefits under section 47 of the Act governing the fund (Ill. Rev. Stat. 1947, ch. 24, par. 944.47 [Jones Ill. Stats. Ann. 100.332]), through a mistake of fact as to the cause of his insanity. These benefits were paid monthly to petitioner as conservatrix of Connolly's estate. Section 47 of the Act provides in effect that ordinary disability benefits shall be provided for firemen in the service who shall become disabled as the result of any cause other than the performance of any act or acts of duty, and other than as the result of alcoholism. The board, having subsequently learned that Connolly had been adjudged insane, and that his insanity was the result of alcoholism, at its meeting held December 22, 1944, rescinded the illegal and unauthorized action taken on January 24, 1940, awarding Connolly ordinary disability benefits under section 47 of the Act, and ordered that a retirement annuity be paid him based on a service of 17 years, six months and two days. At the same time he was awarded a disability pension from November 19, 1939 to March 12, 1943, and his account was adjusted accordingly. The retirement annuity based on 17 years' service amounted to $46.45 a month, whereas the claimed annuity based on the full 20-year service would have required the board to allow him, when he had attained the age of 50 years, $120.83 monthly, which represented one-half of the salary fixed for his position at the time of his retirement.

It appears from the petition that Connolly had attained the age of 50 years on March 3, 1944, and had

been a contributor up to that time of the amount required by the Act; that after conversations with the attorneys and members of the board, the conservatrix made application on behalf of Connolly for age and service annuity, and it is alleged that she was advised that it would be necessary for Connolly to resign as a member of the fire department, and that "in the belief that she as his Conservatrix would be paid age and service annuity benefits based on service up to and including October 19, 1944, your petitioner did procure the resignation of Arthur P. Connolly (although at the time of the filing of said resignation the said Arthur P. Connolly was adjudicated insane) and filed the same with the Civil Service Commission on the 19th day of October 1944." The petition alleges that application for the annuity service was made under date of October 16, 1944, and that his resignation from the fire department was accepted on October 19, 1944.

It further appears from the petition that at the meeting held on December 22, 1944, when the action of the board now sought to be reviewed, was taken, both the conservatrix and her attorney were present, and after discussion the board rescinded its order of January 24, 1940, granting Connolly ordinary disability benefits under section 47 on the ground that a diagnosis of alcoholic psychosis had not been considered, and it was therefore ordered that Connolly be granted disability pension under section 52 of the Act [Ill. Rev. Stat. 1947, ch. 24, par. 944.52; Jones Ill. Stats. Ann. 100.337], effective from November 19, 1939 to March 12, 1943, and the secretary of the board was instructed to adjust Connolly's account accordingly. In addition to being awarded $46.45 per month based on approximately 17 years of service, the conservatrix was also awarded by the board the sum of $807.18, which was found to be due her for contributions made from the disability-benefit payments which she had received under section 47 of the Act, which were held to have

been erroneously granted him, and this sum was accepted by the conservatrix.

██ ██ The question presented is whether the doctrine of laches was properly invoked by the court in dismissing the petition for certiorari. The petition was filed more than four years after the rescinding order of the board was entered on December 22, 1944. No reason for the delay is shown. There is no statute limiting the time within which a common-law writ of certiorari may issue, ''but the courts, by analogy, have established a limitation in regard to the issuing of such writs, the same as the limitation which governs the prosecution of a writ of error'' (*Clark v. City of Chicago,* 233 Ill. 113), and have uniformly held that a party· seeking to review the action of an inferior tribunal by the common-law writ of certiorari must act promptly, and in case of delay must show, by his petition, some legal excuse why he has not moved more promptly.

Since *City of Chicago v. Condell,* 224 Ill. 595 (1907), six months has been established as the limitation period during which the writ of certiorari must be filed, unless a reasonable excuse is shown for the delay. In that case Condell was discharged from the police force in December 1902, and his petition for the writ was filed in May 1904, practically one and one-half years later. Petitioner sought to justify the delay by averring that he had consulted two law firms at different times and was advised that he had no remedy, but ultimately learned that he was discharged under a rule promulgated by the superintendent of police and not by the civil service commission. ''This, we think, is not a sufficient justification for the delay,'' the court said, and continued: ''It is true that mere lapse of time, alone, short of the limitation for the prosecution of a writ of error, will not bar the issuing of the common law writ of *certiorari;* but where a detriment or inconvenience to the public will result,

a party is required to act speedily in making his application and any unreasonable delay will warrant the refusal of the writ.'' The restoration of Condell would in that case have conferred upon him the right to require the payment of his salary to the date of his restoration, and this was held to be such a detriment or inconvenience to the public as to bar the right of review after the expiration of six months.

In *Blake v. Lindblom*, 225 Ill. 555, Blake contended that his discharge from the police department was illegal. His petition for certiorari was filed more than nineteen months after his discharge. No excuse for the delay was stated in the petition. Although the defense of laches had not been interposed or suggested in that case, the court held that ''delay for a shorter time, not satisfactorily explained, has been held by this court to be a bar to the right to a writ of *certiorari* in a case of this character,'' citing *City of Chicago v. Condell, supra*.

In *Clark v. City of Chicago, supra,* a discharged police officer filed a petition for certiorari ten months after he was removed from office, without showing any excuse for the delay. The court said that ''as the petitioner makes no showing why said petition was not filed at an earlier date and within six months of the date of the entry of the order of removal by the civil service commission, we think the appellee should be held to be barred, by reason of his *laches,* of his right to have said order reviewed by the common law writ of *certiorari. . . .*''

In *People v. Burdette*, 285 Ill. 48, the civil service commission interposed the defense of laches to a petition for certiorari filed by a state grain inspector ten months after his discharge. The court observed that a writ of certiorari is not a writ of right, and whether it should be issued is in a large measure discretionary with the court; that the discretion is not arbitrary, but should be based upon reasons of sound public

policy; that no showing was made for the delay beyond six months in filing the petition; and in reliance on the *Condell, Blake* and *Clark* cases, the court held that in the absence of a reasonable excuse, delay for more than six months required that the writ be quashed.

■ In *Carroll v. Houston,* 341 Ill. 531, Carroll was discharged as a captain of police pursuant to charges filed against him. More than eight months elapsed before he filed a petition for certiorari. The court reviewed all the cases hereinbefore discussed, and again enunciated the rule which has been uniformly applied to cases of this character: "where great public detriment or inconvenience is likely to result from interfering with the proceeding of the inferior tribunal the writ should not issue, or if it has been improperly issued it should be quashed when the facts are presented to the court, and it should not issue after six months unless the delay is satisfactorily explained in the petition."

■ Petitioner's counsel say that these decisions may be distinguished from the case at bar because they involved attempts by discharged employees to collect the salary of an office during a period when they had not performed their duties, but during which time other persons had rendered the services and been paid therefor, and thus involved duplicate compensation for the same work. The principle enunciated in the cases discussed applies with equal force to the case at bar. When the board issued its rescinding order on December 22, 1944, both petitioner and her attorney were present. She accepted the lump sum award of $807.18 made at that time (being the total of salary deductions taken from the ordinary disability benefits paid from January 1940 to January 1943), and has accepted as well the annuity of $46.45 per month awarded to Connolly under section 52 of the Act on the basis of a 17-year service record. On January 11,

1949, more than four years after the date of the rescinding order, petitioner filed her petition for a writ of certiorari, submitting for decision a problem much more complex now than at the time the rescinding order was issued. Thus, if the petitioner is successful in obtaining a review of the board's action, there will be presented for decision numerous questions: whether Connolly's insanity was attributable to alcoholism— this issue having a very direct bearing on the question whether petitioner should receive a disability benefit or a monthly annuity payment; what action should be taken on the resignation of an employee adjudicated insane at the time his application for resignation was submitted; what the present status of Connolly is— a member of the fire department on leave of absence, or a retired fireman with how many years of service to his credit; if a ruling, after a hearing on the merits of the case, were adverse to petitioner, what action should be taken to recover money she has wrongfully received; whether Connolly, now said to be residing in Alaska, would be available to testify, or whether he would be permitted to testify, because after being adjudicated insane December 31, 1939, he was restored by an order of court of October 8, 1947, which was vacated as recently as March 31, 1950; to whom, assuming they should be paid at all, should the ordinary disability benefits or monthly annuity checks be paid— to Connolly, or petitioner, his administratrix during the periods of his insanity. Certainly to wait four years before bringing up so many complex questions, constitutes a detriment and inconvenience to the public within the purview of the authorities which hold that the petition for certiorari must be filed within six months after an adverse ruling.

We think that the court properly held that the intervention of four years between the order of the board and the filing of the petition for the writ, without any

excuse for the delay, constituted laches. The order of the superior court is therefore affirmed.

*Order affirmed.*

SCANLAN and SCHWARTZ, JJ., concur.