**Leo Francis Koch, Plaintiff-Appellant, v. The Board of Trustees of the University of Illinois, a Body Corporate and Politic, Defendant-Appellee.**

Gen. No. 48,771.

First District, Second Division.

November 21, 1962.

Rehearing denied and opinion modified
January 22, 1963.

Donald Page Moore and Frederic D. Houghteling, of Chicago (Overton, Marks, Simons & Houghteling, of counsel), for appellant.

Ralph F. Lesemann and James J. Costello, Jr., and Albert E. Jenner, Jr., Prentice H. Marshall and Holland C. Capper, of Chicago (Thompson, Raymond, Mayer & Jenner, of counsel), for appellee.

MR. PRESIDING JUSTICE BRYANT delivered the opinion of the court.

This is an action for damages for breach of a written employment contract between the plaintiff, an assistant professor of biology, and the defendant, the University of Illinois.

In September of 1955 the plaintiff, Leo Francis Koch, joined the faculty of the University of Illinois as a biologist under an employment contract of two years duration. This contract was renewed in 1957 and again in 1959. At the time of this latter renewal he was notified that his new contract, embracing the period of September 1959 to September 1961, would constitute a terminal appointment because, as expressed by the University: "Your professional advancement will best be served in a position which provides greater scope for your special interests than does your present program."

This employment contract explicitly incorporated into its terms the provisions of the "University of Illinois

Statutes" which prescribe the terms and conditions of employment for faculty members. Section 38(c) provides that "Tenure may be terminated by (1) honorable retirement; (2) acceptance of resignation; (3) discharge for cause." Section 38(d) defines cause as "conduct seriously prejudicial to the University through deliberate infraction of law or commonly accepted standards of morality, neglect of duty, inefficiency or incompetency." It is also provided in this section that the above stated enumeration of causes for discharge is not to be deemed exclusive and that the Board of Trustees has the power to discharge for other causes. Section 38 also sets out an elaborate procedure which must be strictly adhered to before a professor can be discharged for cause. He must be served "with a written statement of the charges against him, which shall be sufficiently specific reasonably to inform him of their nature and to enable him to present his defenses thereto." The charges must be heard by the Board of Trustees if the professor so requests in writing and the professor has the right to appear at the hearing, with counsel, if he so desires, to reply to the charges and to present evidence in his behalf. It is also provided that the Board shall not be bound by formal or technical rules of evidence in hearing and deciding the case. Finally, Section 38(f) provides that "any member of the faculty of the University who claims that termination of his services would violate principles of academic freedom shall have the right to a hearing before the Committee On Academic Freedom of the appropriate Senate prior to a hearing, if any, before the Board of Trustees."

Section 38 is tempered, however, by the provisions of Section 39 to the effect that it is the "policy of the University to maintain and encourage full freedom, within the law, of inquiry, discourse, teaching, research and publication. . . ." It is also provided in this latter

section that University employees shall have "the same freedoms as other citizens without institutional censorship or discipline."

In March 1960 two students contributed an essay to the "Off The Cuff" column of the University newspaper, "The Daily Illini." In this essay the authors commented extensively on what they termed the "organization" of "ritualized sex." In effect, this was an uncomplimentary reflection on the standards of morality presently existing at the University of Illinois. On the day after this essay was published, Professor Koch delivered a letter to the editor of the Daily Illini for the purpose of having it published in the newspaper. This letter consisted of more than 2,500 words and it would not be profitable to set forth its full text for the purposes of this opinion. Suffice it to say, that it contained a rather liberal approach to the problems concerning morality on modern day university campuses. Among other things, the author observed that commonly accepted modern day standards of morality, as described by the essayists the day before, were "already decrepit in the days of Queen Victoria" and that premarital intercourse among college students is not, in and of itself, improper.

Subsequently, the President of the University delivered a memorandum to the plaintiff's dean which was promptly delivered to the plaintiff and which embodied the sole charge against the plaintiff, i. e., that his views as expressed in the Daily Illini were offensive, repugnant and contrary to commonly accepted standards of morality and his espousal of these views could be interpreted as an encouragement of immoral behavior and that for these reasons he should be relieved of his University duties.

In accordance with his employment contract the plaintiff then requested a hearing before the University Senate Committee on Academic Freedom, which is composed of top ranking academic and administrative

54

personnel of the University. This committee has advisory powers only and said committee unanimously recommended that the plaintiff be reprimanded but not discharged. Subsequently, the Board of Trustees held its hearing, at which plaintiff was represented by counsel. After hearing arguments submitted by counsel for the University and by plaintiff's counsel, the Board of Trustees ordered that the plaintiff be discharged on August 31, 1960, one year before his contract of employment was to be terminated.

After being formally discharged by the University, the plaintiff brought an action in the Superior Court of Cook County, consisting initially of two counts. Count I was for damages for breach of his written contract of employment resulting from his alleged wrongful discharge and Count II was for common law writ of certiorari to review the proceeding before and decision of the Board of Trustees which resulted in the plaintiff's discharge. Subsequently, plaintiff voluntarily dismissed Count II. The defendant moved to dismiss Count I under two sections of the Civil Practice Act: Section 45, for failure to state a cause of action; and Section 48, on the grounds of release, waiver and estoppel. Both these motions were sustained by the trial court.

The plaintiff then appealed directly to the Supreme Court alleging the existence of a constitutional issue and claiming jurisdiction under Section 75 of the Civil Practice Act. The defendant moved to transfer the appeal to this court asserting that no constitutional issues were involved. That motion was sustained by the Supreme Court and for this reason there will be no constitutional issues discussed in this opinion. Prudential Ins. Co. v. Richman, 292 Ill App 261, 11 NE2d 126; Penman v. Village of Philo, 309 Ill App 49, 32 NE2d 640.

It is the defendant's contention that the plaintiff's complaint, alleging breach of contract, was properly

**55**

dismissed because it constituted an improper collateral attack upon the quasi-judicial decision of the Board of Trustees and that if there were any remedy available to the plaintiff it consisted of a common law writ of certiorari.

A common law writ of certiorari is no longer available to the plaintiff in this case because of his voluntary dismissal of Count II of his complaint. Furthermore, it is highly doubtful that certiorari would have been a proper remedy even if Count II had not deen dismissed. As stated by Mr. Justice Friend of this court: "Since City of Chicago v. Condell, 224 Ill 595, 79 NE 954 (1907), six months has been established as the limitation period during which the writ of certiorari must be filed, unless a reasonable excuse is shown for the delay." Connolly v. Upham, 340 Ill App 387, 391, 92 NE2d 207. See also Clark v. City of Chicago, 233 Ill 113, 84 NE 170; Carroll v. Houston, 341 Ill 531, 173 NE 657. In view of the fact that plaintiff has voluntarily dismissed Count II of his complaint, which sought a common law writ of certiorari to review the proceedings before and decision of the Board of Trustees, we do not feel called upon to determine whether or not a common law writ of certiorari would have been a proper remedy.

It is our opinion that the trial court was correct in dismissing Count I, the only remaining count of this action, under Section 45 of the Civil Practice Act for failure to state a cause of action. When the plaintiff entered into his employment contract with the University of Illinois, he voluntarily agreed to the University's rules and procedures for determining the causes of discharge, the quasi-judicial framework for determining the existence of those causes and the procedure whereby he might be discharged as a result of those causes. What his present complaint amounts to is an assertion that he should not be bound by the agreement

56

to which he voluntarily assented. He agreed, in his contract of employment, that he could be discharged subsequent to a hearing by the Committee on Academic Freedom and the Board of Trustees.

 He appeared before these boards and in his latter appearance was represented by counsel, at which time, after a full hearing of the evidence presented by his own counsel and by counsel for the University, he was discharged. This was exactly the procedure to which he had assented in his contract of employment and this court will not relieve him of these terms and obligations created by his own doing by collaterally reviewing the proceedings of the forum of the plaintiff's own choice and reexamining the facts.

In support of his proposition that an action at law for damages for breach of contract is a proper remedy in the case at bar, plaintiff has cited no less than forty cases, most of which involved the alleged wrongful discharge of school employees, in which a breach of contract action was held to be a proper remedy. However, none of those cases involved detailed procedures, adopted by agreement between the parties, concerning formal hearings and representation by counsel as a means of ultimately resolving conflicts.

It is the opinion of this court that the decision of the trial court should be affirmed.

Affirmed.

BURKE and FRIEND, JJ., concur.