DENNIS J. GATES, Plaintiff-Appellant, v. HOLY CROSS HOSPITAL et al., Defendants-Appellees.

First District (1st Division)    No. 86—2568

Opinion filed September 26, 1988.

440

J. Paige Clousson, of Chicago, for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (William G. Swindal and Tom H. Luetkemeyer, of counsel), for appellees.

JUSTICE MANNING delivered the opinion of the court:

Plaintiff, Dr. Dennis Gates, an orthopedic surgeon, appeals from an order of the circuit court of Cook County dismissing his nine-count complaint against defendants Holy Cross Hospital; Sister M. Dorothea, president and chief executive officer of the hospital; Eugene Diamond, executive vice-president; and Dr. Peter F. Jokocko, president of the hospital's medical staff and chairman of the executive committee. The circuit court entered judgment for the defendants, and the plaintiff filed the present appeal.

On February 16, 1984, clinical and admitting privileges of Dr. Dennis Gates were summarily suspended by Sister M. Dorothea. These privileges were suspended because on February 15, 1984, between 6 p.m. and 8 p.m., while Dr. Gates was on scheduled call, he was unavailable to the emergency room staff due to the inoperation of his pager.

Article VII, section 2, of the medical staff bylaws provides that the chief executive officer "shall have the authority whenever action must be taken immediately in the best interest of patient care in the hospital, to summarily suspend all of any portion of the clinical privileges of a practitioner, and such summary suspension shall become effective immediately upon imposition." It was pursuant to this provision that Dr. Gates' suspension took place. The suspension was terminated by Sister Dorothea on March 19, 1984, and Dr. Gates was reinstated to the medical staff. During the 32-day period of suspension Dr. Gates continued to care for acutely injured patients.

On February 21, 1984, Dr. Gates wrote a letter to Sister Dorothea explaining why he was unavailable on February 15, 1984, and stating that, "If you still wish me to appear before a special convening of the

executive committee, I will do so." The bylaws provide that a practitioner whose clinical privileges have been summarily suspended shall be entitled to a hearing before the executive committee within a reasonable time.

On March 6, 1984, and March 13, 1984, Dr. Gates requested an executive committee hearing. On April 11, 1984, Dr. Jokocko advised Dr. Gates that the executive committee met on April 10, 1984, and recommended termination of the suspension. This recommendation occurred 22 days after Sister Dorothea had previously terminated the suspension. Moreover, the executive committee hearing was held 28 days after Dr. Gates' last request for a hearing in violation of article VIII, section 3.1, of the bylaws, which require that a hearing will be held not more than 20 days from the receipt date of the request.

Dr. Gates was entitled to a hearing before an *ad hoc* hearing committee pursuant to article VIII, section 1, of the bylaws. Specifically, pursuant to article VIII of the bylaws, plaintiff has a right to a hearing and appellate review. Article VIII, section 1.1, provides:

"When any practitioner receives notice of a recommendation of the executive committee that, if ratified by decision of the governing body, will adversely affect his status as a member of the Medical Staff or his exercise of clinical privileges, he shall be entitled to a hearing before an ad hoc committee of the medical staff. If the recommendation of the executive committee following such hearing is still adverse to the affected practitioner he shall then be entitled to an appellate review by the governing body before the governing body makes a final decision on the matter."[1]

On April 19, 1984, and April 27, 1984, Dr. Gates requested an appellate hearing before the *ad hoc* committee of the medical staff to challenge the suspension. This hearing was held on May 16, 1984, which was 27 days after plaintiff's original request for an *ad hoc* committee hearing, also in violation of article VIII, section 3.1, of the by-

[1]Pursuant to the definition section of Holy Cross Hospital bylaws: "(1) The term 'medical staff' shall mean physicians and osteopathic physicians holding unlimited licenses and duly licensed dentists, who are privileged to attend patients in Holy Cross Hospital. (2) The term 'governing body' shall mean the Board of Trustees of Holy Cross Hospital. (3) The term 'chief executive officer' shall mean the president of Holy Cross Hospital. (4) The term 'practitioner' shall mean an appropriately licensed medical physician, an osteopathic physician with an unlimited license or an appropriately licensed dentist or podiatrist. (5) The term 'executive committee' shall mean the executive committee of the medical staff unless specific reference is made to the executive committee of the governing body." An *ad hoc* hearing committee consists of not less than five members of the medical staff.

laws. The *ad hoc* committee submitted a report to the executive committee on May 21, 1984, stating that, "We strongly feel that inadvertent failure to answer an emergency room call may not be truly dangerous to a patient's welfare and should not mandate a summary suspension." However, the *ad hoc* committee simultaneously determined that Dr. Gates' earlier failure to provide the emergency room with names of alternate physicians does justify a suspension.

Although article VIII, section 5, provides that "the hearing committee shall make a written report and recommendation and shall forward the same together with the hearing record and all other documentation to the executive committee or to the governing body, which ever appointed it," there is nothing in the record to indicate that the executive committee, which is the next level of review, ever considered the report of the *ad hoc* committee.

On October 24, 1984, plaintiff filed his complaint in the circuit court of Cook County. The complaint noted several procedural violations of the bylaws, including: (1) the notice of hearing did not state the acts or omissions with which the plaintiff was charged; (2) an accurate record of the *ad hoc* committee's hearing was not maintained; (3) failure to conduct a hearing within 20 days of the request for hearing; (4) portions of the hearing were conducted outside the presence of the plaintiff; (5) failure to complete the hearing and appeals process; and (6) participation in the hearing by the hospital's "in house legal counsel."

On January 9, 1985, defendants filed a motion to dismiss alleging that the complaint was insufficient at law. Plaintiff was allowed to amend his complaint. However, on August 29, 1986, the trial court entered an order dismissing the plaintiff's first amended complaint with prejudice pursuant to section 2—615 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—615). The court reasoned that the complaint could not be amended to conform to the law since no contractual relationship or tort existed nor was there a fiduciary relationship. On September 18, 1986, plaintiff appealed from that order. The issue presented for review is whether the trial court abused its discretion in dismissing plaintiff's first amended complaint.

■■ We must determine whether the plaintiff's first amended complaint was sufficient to state a cause of action in order to withstand a motion to dismiss with prejudice. Pleadings are to be liberally construed to provide substantial justice between parties. (Ill. Rev. Stat. 1983, ch. 110, par. 2—603(c).) A dismissal should not be based solely on the pleadings "unless it clearly appears that no set of facts can be proved which will entitle plaintiffs to recover." (*Fitzgerald v. Chicago*

*Title & Trust Co.* (1978), 72 Ill. 2d 179, 187, 380 N.E.2d 790.) Moreover, section 2—612(b) of the Code of Civil Procedure provides:

"No pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet." Ill. Rev. Stat. 1983, ch. 110, par. 2—612(b).

Defendants argue that the amended complaint is an impermissible collateral attack on the hospital's disciplinary actions, citing *Koch v. Board of Trustees* (1962), 39 Ill. App. 2d 51, 57, 187 N.E.2d 340, *cert. denied* (1964), 375 U.S. 989, 11 L. Ed. 2d 475, 84 S. Ct. 523. They further argue that the court cannot interfere with a discretionary decision unless the plaintiff demonstrates a substantial violation of the hospital bylaws. *Maimon v. Sisters of the Third Order of St. Francis* (1983), 120 Ill. App. 3d 1090, 1094, 458 N.E.2d 1317.

Counts I and II allege that the summary suspension violated the hospital bylaws and request the removal of the suspension from plaintiff's records. They further allege that the suspension was without cause, unfair and harsh. Plaintiff sought compensatory damages for economic loss in the amount of $250,000.

■ Plaintiff contends that hospital actions to suspend or terminate the medical practice privileges of a member of a medical staff are subject to judicial review. Moreover, he asserts that the first amended complaint is not an impermissible collateral attack on the hospital's disciplinary actions. We agree in part. While it is well settled in Illinois that a private hospital's refusal to appoint a physician to its medical staff is not subject to judicial review (*Rao v. St. Elizabeth's Hospital* (1986), 140 Ill. App. 3d 442, 456, 488 N.E.2d 685; *Knapp v. Palos Community Hospital* (1984), 125 Ill. App. 3d 244, 256, 465 N.E.2d 554), an exception to the general rule of nonreview exists where a private hospital revokes or reduces a physician's existing staff privileges. The hospital must follow its own bylaws in so doing or be subject to limited judicial review. (*Jain v. Northwest Community Hospital* (1978), 67 Ill. App. 3d 420, 425, 385 N.E.2d 108.) The rationale of the general rule of nonreviewability reflects our court's unwillingness to substitute its judgment for the judgment of private hospital authorities. *Rao*, 140 Ill. App. 3d at 456.

In counts I and II plaintiff supports his contention that the medical staff bylaws of Holy Cross Hospital were not substantially complied with by asserting several procedural violations of the bylaws, including: (1) failure to conduct a timely hearing; (2) failure to complete the hearing and appeals process; (3) an accurate record of the *ad hoc* committee's hearing was not maintained; (4) defective notice of hear-

ing; (5) testimony was given outside the presence of the plaintiff; and (6) participation in the hearing by the hospital's "in house legal counsel."

Specifically, both the executive committee and the *ad hoc* committee held their hearings in excess of the 20-day requirement in violation of article VIII, section 3, of the bylaws. Additionally, article VIII, section 3.2, provides that the notice of hearing shall state the acts or omissions with which the practitioner is charged and/or the other reasons or subject matter considered in making the adverse recommendation or decision. It further provides that "a copy of the notice shall be forwarded to the practitioner by certified mail."

Plaintiff argues that he never received a notice of hearing before the *ad hoc* committee hearing which described the acts or omission for which he was charged nor did the notice he received provide him with the reasons for his suspension. The February 16, 1984, letter from Sister Dorothea was the only statement that Dr. Gates received relating the reasons for the summary suspension. Sister Dorothea specifically stated that "this action is being taken based upon reports of events alleged to have taken place on February 15, 1984, while you were on-call in the emergency room and unavailable for more than two hours." However, the *ad hoc* committee in reaching their decision stated that a suspension could not be justified based on a beeper failure alone. The *ad hoc* committee further stated that a suspension was justified for an action which occurred several months earlier when Dr. Gates failed to provide the emergency room with the names of alternate physicians. Since neither of these acts or omissions upon which Dr. Gates' suspension was based was included in Dr. Gates' notice of hearing, the hospital violated its bylaws as it relates to the notice provision.

Plaintiff further asserts that the hospital failed to complete the hearing and appeals process. After the *ad hoc* committee made their recommendation, that information was to be forwarded to the executive committee pursuant to article VIII, section 5. If the recommendation of the executive committee remained adverse, the affected practitioner may within 10 days of receipt of the notice of the adverse recommendation request an appellate review of the executive committee's determination by the governing body pursuant to article VIII, section 6. Plaintiff maintains that he was not permitted the opportunity to appeal to the governing body since he never received a notice of an adverse recommendation by the executive committee in violation of the hospital bylaws.

Plaintiff has demonstrated a substantial violation of the by-

laws. Therefore, we conclude that plaintiff's complaint insofar as counts I and II are concerned is not a collateral attack on the hospital's disciplinary actions, and the courts are vested with the authority to determine whether a private hospital has followed its own bylaws in revoking or reducing a physician's existing staff privileges. *Jain v. Northwest Community Hospital* (1978), 67 Ill. App. 3d 420, 425, 385 N.E.2d 108.

We further conclude that in the instant case, the trial court should not have dismissed counts I and II of this complaint for failure to state a cause of action. To the contrary, plaintiff has asserted sufficient bylaw violations to initiate the limited judicial review recognized by Illinois case law to defeat a motion to dismiss with prejudice. Rather than dismissing counts I and II, the trial court should have determined whether the bylaws were substantially followed. Under counts I and II, plaintiff also sought compensatory damages for economic loss. However, in accordance with the Hospital Licensing Act, hospitals and their staff are immune from civil liability for services rendered while serving in the capacity of a medical care evaluation committee or peer review committee. Ill. Rev. Stat. 1985, ch. 111½, par. 151.2;[2] *Barrows v. Northwestern Memorial Hospital* (1988), 123 Ill. 2d 49, 58, 525 N.E.2d 50.

The Hospital Licensing Act specifically provides:

> "No hospital and no individual who is a member, agent, or employee of a hospital, hospital medical staff, hospital administrative staff, or hospital governing board shall be liable for civil damages as a result of the acts, omissions, decisions, or any other conduct of a medical utilization committee, medical review committee, patient care audit committee, medical care evaluation committee, quality review committee, credential committee, peer review committee, or any other committee whose purpose, directly or indirectly, is internal quality control or medical study to reduce morbidity or mortality, or for improving patient care within a hospital, or the improving or benefiting of patient care and treatment, whether within a hospital or not, or for the purpose of professional discipline. Nothing in this Section shall relieve any individual or hospital from liability arising from treatment of a patient." Ill. Rev. Stat. 1985, ch. 111½, par. 151.2.

---

[2]Effective August 16, 1985—but see *Rodriguez-Erdman v. Ravenswood Hospital Medical Center* (1987), 163 Ill. App. 3d 464, 471, 505 N.E.2d 1314, which states that the statute is retroactive.

■ Although the defendants agree that the hospital must follow its own bylaws or be subject to limited judicial review (*Jain v. Northwest Community Hospital* (1978), 67 Ill. App. 3d 420, 425, 385 N.E.2d 108), they maintain that a judicial review of Dr. Gates' claim is limited by the common law writ of *certiorari*. The only purpose of the writ of *certiorari* is to bring before a superior tribunal the record of the proceedings of an inferior tribunal for inspection, in order to determine whether the inferior tribunal had jurisdiction over the parties and subject matter and whether the inferior tribunal exceeded its jurisdiction or proceeded in violation of the law. *Brown v. VanKeuren* (1930), 340 Ill. 118, 121, 172 N.E. 1.

In the instant case, the trial court concluded that the plaintiff could not file his complaint under a writ of *certiorari* since the suspension occurred over eight months ago and a complaint must be filed within six months. However, the writ of *certiorari* is not the exclusive method of review. This court has also reviewed whether hospital bylaws have been substantially complied with based on an injunction. *Knapp v. Palos Community Hospital* (1984), 125 Ill. App. 3d 244, 246, 465 N.E.2d 554; *Fahey v. Holy Family Hospital* (1975), 32 Ill. App. 3d 537, 538, 336 N.E.2d 309, *appeal denied* (1976), 61 Ill. 2d 601, *cert. denied* (1976), 426 U.S. 936, 49 L. Ed. 2d 387, 96 S. Ct. 2650.

■ In *Knapp v. Palos Community Hospital* (1984), 125 Ill. App. 3d 244, 465 N.E.2d 554, the plaintiff sought injunctive relief for wrongful curtailment of his medical staff privileges. This court held that the trial court abused its discretion in granting injunctive relief based on the hospital's actions which were not subject to judicial review since the bylaws were not violated and the plaintiff did not establish a likelihood of success on the merits of the case. *Knapp v. Palos Community Hospital* (1984), 125 Ill. App. 3d 244, 259, 465 N.E.2d 554.

In *Fahey v. Holy Family Hospital* (1975), 32 Ill. App. 3d 537, 336 N.E.2d 309, *appeal denied* (1976), 61 Ill. 2d 601, *cert. denied* (1976), 426 U.S. 936, 49 L. Ed. 2d 387, 96 S. Ct. 2650, a physician sought to restrain enforcement of a rule requiring him to consult with a member of the gynecology and obstetrics department before the performance of major surgery in the hospital. The trial court ordered the hospital to give the physician a hearing before the rule could be applied in accordance with the mental and dental staff bylaws, but denied the surgeon's motion for temporary injunctive relief. (32 Ill. App. 3d at 543, *appeal denied* (1976), 61 Ill. 2d 601, *cert. denied* (1976), 426 U.S. 936, 49 L. Ed. 2d 387, 96 S. Ct. 2650.) This court affirmed the order of the trial court.

Even if the common law writ of *certiorari* was the exclusive method of review, it carries with it a discretionary statute of limitation, usually six months unless there is a reasonable excuse for delay. (*Koch v. Board of Trustees* (1962), 39 Ill. App. 2d 51, 56, 187 N.E.2d 340, *cert. denied* (1964), 375 U.S. 989, 11 L. Ed. 2d 475, 84 S. Ct. 523; *Connolly v. Upham* (1950), 340 Ill. App. 387, 391, 92 N.E.2d 207.) It is well established that administrative remedies must be exhausted before pursuing judicial remedies. (*Steward v. Allstate Insurance Co.* (1980), 92 Ill. App. 3d 637, 641, 415 N.E.2d 1206, 1210; *Myers v. Bethlehem Shipbuilding Corp.* (1938), 303 U.S. 41, 50-51, 82 L. Ed. 638, 644, 58 S. Ct. 459, 463.) Therefore, the time limitation period should not have begun to run until the administrative remedies were exhausted.

■ Since the record does not reflect that the executive committee rendered a final decision, we can only conclude that the highest level of review pertaining to this case was the May 16, 1984, meeting of the *ad hoc* committee. Plaintiff's original complaint was filed on October 24, 1984, which is within the six-month limitation period. The first amended complaint relates back to the date the original complaint was filed. Ill. Rev. Stat. 1983, ch. 110, par. 2—616(b).

■ Defendants further contend that the issue is moot since the plaintiff's suspension had been terminated and his full clinical privileges had been restored prior to the filing of this complaint. We disagree. The issue is not moot because an actual controversy does exist. An actual controversy "requires a showing that the underlying issues of the case are not moot or premature." (*Clyde Savings & Loan Association v. May Department Stores* (1981), 100 Ill. App. 3d 189, 192, 426 N.E.2d 955.) In the case at bar, there remains a question regarding whether the hospital substantially complied with its medical staff bylaws relative to Dr. Gates' suspension. Moreover, the inclusion of this disciplinary action in the plaintiff's record is further evidence that an actual controversy exists, and should plaintiff prevail when the trial court enters a final disposition on the merits of this case, he may be entitled to an expungement of the summary suspension from his record.

We remand this case to the circuit court with directions to allow plaintiff to proceed on the merits insofar as counts I and II are concerned to determine whether there has been a substantial violation of the bylaws and if so to grant such relief as is allowed by law.

■ Under counts III through IX, plaintiff raises issues regarding breach of contract, tortious interference with contract, tortious interference with prospective business advantage, breach of fiduciary

duty, and defamation. Each of these counts is seeking compensatory or punitive damages. As previously noted, hospitals and their staff are immune from civil liability for services on medical care evaluation committees or peer review committees. (Ill. Rev. Stat. 1985, ch. 111½, par. 151.2; *Barrows v. Northwestern Memorial Hospital* (1988), 123 Ill. 2d 49, 58, 525 N.E.2d 50.) Therefore, based on this grant of immunity from civil liability, we conclude that the trial court properly dismissed counts III through IX with prejudice.

For the foregoing reasons, the order of the circuit court of Cook County dismissing the plaintiff's first amended complaint with prejudice is affirmed in part and reversed in part and remanded for further proceedings consistent with this opinion.

Judgment affirmed in part; reversed in part and remanded with directions.

QUINLAN and O'CONNOR, JJ., concur.