WILLIAM B. KNAPP, M.D., *et al.*, Plaintiffs-Appellees, *v.* PALOS COMMUNITY HOSPITAL, *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 82—2115

Opinion filed June 13, 1984.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, William J. Holloway and Michael R. Callahan, of counsel), for appellant the St. George Corporation.

Gregory A. Adamski, Stephen P. Carponelli, and Michael J. Weik, all of Chicago (Winston & Strawn and Carponelli & Krug, of counsel), for appellees.

McLaughlin, Kinser & Bryant, Schuyler, Ballard & Cowen, Harry L. Kinser, Kenneth C. Robbins, Jeffery W. Maysent, and Daniel M. Schuyler, all of Chicago, for amici curiae Illinois Hospital Association and the Chicago Hospital Council.

JUSTICE McGILLICUDDY delivered the opinion of the court:

On January 27, 1982, the plaintiffs, William B. Knapp, M.D.; Francisco Lopez, M.D.; Hugh Savage, M.D.; and Dr. William B. Knapp & Associates brought this action for injunctive relief alleging wrongful curtailment of medical staff privileges against the defendants, Palos Community Hospital; the St. George Corporation; Sister Margaret Wright; Thomas Lavery; Carlo Fioretti, M.D.; Terrance Moisan, M.D.; and Dr. Adams. On July 15, 1982, the trial court en-

tered a temporary restraining order enjoining the defendants from denying the plaintiffs reappointment to the medical staff. On July 20, 1982, the plaintiffs amended the complaint to allege that Palos had violated its bylaws in denying reappointment. The amended complaint also joined Kenneth Wilcox, M.D.; S. Katapodis, M.D.; Y. Normanboy, M.D.; Z. Risvi, M.D.; T. Arvyoa, M.D.; John Kline, M.D.; N. Henry Coleman, M.D.; Roland Winterfield, M.D.; David Scheiner, M.D.; and S. Caliendo, M.D., as additional defendants. On July 30, 1982, following a five-day hearing, the trial court dissolved the temporary restraining order of July 15, 1982, and entered a preliminary injunction reinstating the plaintiffs to the medical staff with full privileges. The St. George Corporation, d/b/a Palos Community Hospital (Palos), brought this interlocutory appeal. The issues presented for review are whether the trial court abused its discretion in entering the preliminary injunction and whether the hospital violated its bylaws in not reappointing the plaintiffs to the medical staff.

The plaintiffs, specialists in internal medicine, practice as a group at Palos. Dr. Knapp joined the Palos staff in 1972, Dr. Lopez in 1975 and Dr. Savage in 1977. Each plaintiff also enjoys staff privileges at Mercy Hospital and Medical Center in Chicago, Little Company of Mary Hospital in Evergreen Park and Suburban Hospital and Sanitarium of Cook County in Hinsdale. The plaintiffs have an office in Evergreen Park.

Palos is a private hospital located in Palos Heights, Illinois. It is owned and operated by the St. George Corporation, a not-for-profit organization. Sister Wright, the president and chief executive officer of Palos, reports directly to the St. George Corporation Board of Directors (Board).

The Joint Commission on the Accreditation of Hospitals requires quarterly audits of the hospital's respiratory care services. Accordingly, among the four audits conducted at Palos in 1981 was an ancillary services audit of ventilatory care by Dr. Moisan, Palos' director of respiratory therapy, and Dr. Adams (the Moisan audit). Ventilatory care deals with the circulation and exchange of gases in the lungs that is basic to respiration. The Moisan audit reviewed the medical records of patients who had received ventilatory care treatment from 11 physicians from January through June 1981. Of 33 deficiencies found, 17 were in the charts of the plaintiffs' patients.

On November 16, 1981, Palos' intensive care committee reviewed the Moisan audit results and voted to recommend that ventilatory privileges be separately delineated on a privilege card for each physician on the staff. Dr. Savage participated in the meeting.

On November 18, 1981, the Moisan audit results were presented at a department of medicine meeting which the three plaintiffs attended. The department of medicine voted to approve the recommendation of the intensive care committee.

On November 19, 1981, the quality assurance committee (also known as the utilization review committee) voted to accept the Moisan audit. The committee adopted a motion recommending that Dr. Fioretti, Chairman, notify the physician with the greatest number of deficiencies that all orders for mechanical ventilation would be concurrently reviewed by Dr. Moisan or Dr. Adams.

There is conflicting testimony as to what happened at this meeting. According to Dr. Knapp, he protested upon learning of the Moisan audit and demanded to know the numbers of the charts, the names of the patients, and the deficiencies and their relations to the charts. He testified that he did not discover the chart numbers at issue until February 15, 1982. Dr. Moisan countered that Dr. Knapp did not request identification of the chart numbers included in the audit at the meeting, but that if he had, Dr. Moisan would have furnished the numbers. Dr. Moisan also testified that he had volunteered to give the charts or chart numbers to the plaintiffs. The five charts in question were on the table during the meeting.

The medical executive committee met on November 24, 1981, and approved the intensive care committee's recommendation to list ventilatory privileges on the privilege cards. It was noted that since these privileges have never been assigned in the past, "one cannot consider that they are being denied to anyone at this time."

On December 11, 1981, the recommendation of the quality assurance committee regarding review of ventilation orders was incorporated in a letter to Dr. Knapp. The letter stated, in relevant part, as follows:

> "It was moved and carried that a letter be forwarded to your attention informing you that your group's charts had the greatest number of deficiencies, and in view of the findings of this audit all orders for mechanical ventilation will be concurrently reviewed by Dr. Moisan or Dr. Adams.
>
> In as much [sic] as Dr. Moisan has a contractural [sic] relationship with the hospital, he has the authority to change any orders that are inappropriate. Dr. Moisan has been instructed to intervene on behalf of any patient on any mechanical ventilation in situations where management is inappropriate, deficient or dangerous. Should there be a need to intervene, you will be informed. Should there be a conflict, it will be resolved by Ad-

ministration and the Department of Medicine."

At the next meeting of the medical executive committee on December 22, 1981, Dr. Murphy read a letter from Dr. Knapp protesting the quality assurance committee's decision to have his ventilatory orders monitored. He asserted that he had never been notified of the deficiencies in his patients' charts prior to the monitoring and that his right to due process had been violated. It was noted that members of Dr. Knapp's group attended the meetings of the quality assurance committee and department of medicine when the audit was presented. Following discussion, the committee decided to advise Dr. Knapp that it was the opinion of the executive committee that the audit was appropriately reviewed and approved, that no privileges of any physician were restricted, and that ventilatory privileges would be added to the privilege card and would be reviewed for the first time during the annual reappointment process.

Dr. Savage, Dr. Moisan, medical affairs vice-president Thomas Lavery, and medical staff president Dr. Rodolfo Mejicano met on December 23, 1981, to resolve any problems with the parties involved and to institute a mechanism for the review of the plaintiffs' ventilatory orders. Dr. Moisan testified that he brought the charts in question to the meeting and offered them to Dr. Savage. Dr. Savage declined to review them and said he was not interested at that time in going over them. Dr. Moisan further testified that Dr. Savage said he understood Dr. Moisan's observations of the audit, and realized there would be no interference with his ability to write ventilatory orders. According to Dr. Mejicano's testimony, Dr. Savage agreed that any conflict between one of the plaintiffs and the lung therapist would be resolved by Dr. Moisan or Dr. Mejicano. Dr. Knapp testified that Dr. Savage was acting on behalf of the three plaintiffs at this meeting. The arrangements made at the meeting were confirmed by Lavery and Dr. Savage on December 28, 1981.

Palos' bylaws authorize a peer review system to evaluate quality of medical care and to annually reappoint the members of its medical staff, subject to the ultimate authority of the Board. The reappointment procedure begins with the medical staff which, through appropriate committees, considers each application for reappointment and transmits its findings to the Board. The criteria used for the evaluation of each physician include, *inter alia*, direct observation of care provided by review of patients' records and medical staff records; determination to adhere strictly to professional ethics, to work cooperatively with others and to be willing to participate in the discharge of staff responsibilities; provision of quality medical care to patients; and

participation in the patient care audit, utilization review and other medical quality maintenance activities.

The bylaws require an initial review of all pertinent information available on each practitioner by the privilege evaluation committee of each department. The privilege evaluation committee makes recommendations as to reappointment, promotion and granting of clinical privileges of each practitioner to the department chairman. The members of the department review the recommendations and by majority vote approve or disapprove them. The chairman then submits the privilege evaluation committee recommendations and the department conclusions to the medical executive committee.

Following review of those recommendations and conclusions, the medical executive committee makes findings, which findings if favorable to the practitioner, are forwarded to the Board. If the findings are adverse to the practitioner with respect to reappointment, classification or clinical privileges, the affected practitioner is entitled to notice and a hearing as provided by article IX of the bylaws.

Article IX of the bylaws allows a practitioner to request a hearing within 30 days after receipt of notice of any initial adverse decision. The hearing is held before an *ad hoc* hearing panel of five persons, three of whom must be practitioners. Within 14 days after receipt of a written request for a hearing, the medical executive committee schedules the hearing for not less than 21 nor more than 42 days from the receipt of the request. The president notifies the practitioner of the time, date and place of the hearing, as well as the acts or omissions with which he is being charged, a list of specific or representative charts being questioned, and/or other reasons or subject matter that were considered in making the adverse decision.

The bylaws grant participants the rights to present and examine witnesses, question witnesses presented by others on relevant matters, and introduce oral and documentary evidence. The hearing committee may actively participate in the proceedings and shall deliberate outside the presence of the other participants. Within 14 days of the hearing, the hearing committee shall report in writing its decision and findings to the medical executive committee or to the Board and to the affected practitioner. The report shall include the recommendations of the hearing committee to affirm, modify or reject the initial adverse decision, with supporting documentation.

If the hearing committee's decision is adverse to the practitioner, he may request in writing an appellate review within 14 days of receipt of notice of the decision. This review is conducted by at least five disinterested persons appointed by the chairman of the Board.

The practitioner has access to reports and all material considered by the hearing committee. He may also submit a written statement on his own behalf which shall specify the areas of disagreement and the practitioner's reasons. The appellate review committee has the responsibility to determine whether the adverse decision against the practitioner was justified. Within 14 days after the completion of the review, the committee shall report in writing to the Board its recommendation to affirm, modify or reverse the adverse decision, the basis for such recommendation, and supporting documentation. Within 21 days of the appellate review, the Board takes final action on the matter and notice thereof shall be sent to the practitioner.

On January 27, 1982, the department of medicine privilege evaluation committee began the annual review process by considering the plaintiffs' applications for reappointment to the medical staff. The privilege evaluation committee approved the applications except as to ventilation therapy privileges. The privilege evaluation committee voted to recommend the reappointments and deferred discussion of the ventilation question and the Moisan audit to its next meeting.

Also on January 27, 1982, the plaintiffs filed a complaint in the circuit court of Cook County against Palos, the St. George Corporation, Sister Margaret Wright, Thomas Lavery, Dr. Fioretti, Dr. Moisan and Dr. Adams. The complaint alleged that the plaintiffs' privileges to write ventilation orders were curtailed by the action of the quality assurance committee, that the action taken violated Palos' bylaws, and that the defendants' action was wrongful.

The next privilege evaluation committee meeting took place on February 10, 1982. As a result of a motion made, seconded and carried, Dr. Lopez was not permitted to tape record the meeting. Dr. Moisan announced that since the plaintiffs had filed a lawsuit, he would be unable to discuss their ventilation privileges. Sister Wright described the complaint filed in the circuit court by the plaintiffs and announced that, in the interest of impartiality, Palos had sought external review of the medical care rendered by the plaintiffs. She reported that Dr. David L. Scheiner of Michael Reese Hospital and Pritzker School of Medicine, hired as a consultant, had reviewed various charts of the plaintiffs' group and reported that their practice had fallen sharply below accepted standards of medical care. Sister Wright suggested that the external review be given serious consideration and recommended that the plaintiffs' applications for reappointment be denied.

Dr. Lopez objected, stating that the audit and charts examined by Dr. Scheiner had never been presented to him for review. It was

pointed out that Dr. Lopez and every other privilege evaluation committee member had access to the charts scheduled for review prior to the meeting. Sister Wright advised that the availability of the charts would be discontinued on advice of legal counsel due to the pending lawsuit. Dr. Moisan stated that the issue was overall quality of care as well as ventilatory privileges. The committee agreed to make the reports and charts which were reviewed by Dr. Scheiner available to its members. No one reviewed any charts during the meeting.

Dr. Moisan made a motion that the plaintiffs not be reappointed to the staff; Dr. Kline seconded the motion. During the ensuing discussion, it was pointed out that for certain diagnoses, the plaintiffs' overutilization of the hospital resulted in hospitalizations that were 50% longer and costs that were 31% greater than those of the other staff members. Two committee members, Drs. Moisan and Kline, voted to deny reappointment. Two members abstained from voting. Dr. Mejicano did not vote and he stated that he was required to vote only to break a tie vote. Sister Wright did not vote. Dr. Lopez was not allowed to vote. Dr. Mejicano testified that he had not encountered another situation where a committee member was not allowed to vote on his own privilege form. He believed the committee members felt pressure from Sister Wright to vote again on the applications. The privilege evaluation committee recommendations to deny the plaintiffs' reappointment were forwarded to the department of medicine.

On February 18, 1982, the department of medicine considered the plaintiffs' applications for reappointment and the privilege evaluation committee recommendations that they be denied. Dr. Knapp read a memorandum from the plaintiffs to the department of medicine which criticized the recommendations, the Moisan audit, and the Palos administration and peer review system. Dr. Moisan stated that he monitors all ventilatory care without fee to the physicians, most of whom appreciate the service, pursuant to a contract with the Board. He added that at no time were the plaintiffs informed that they could not write orders for ventilatory care.

Although the Moisan audit and Dr. Scheiner's report were not reviewed at the meeting, at least four of the voting members (Drs. Winterfield, Coleman, O'Reilly and Kline) had examined them prior to that time. The charts evaluated by Dr. Scheiner were there, but no one looked at them. Dr. McCormick testified that, except for two new physicians, each member of the department of medicine staff has belonged to one of the hospital's peer review committees and has had ample opportunity to examine the plaintiffs' patients' charts. The is-

sue of the standard of care practiced by the plaintiffs was then discussed.

The department of medicine went into executive session, excluding the parties to the lawsuit (Lavery, Sister Wright, and Drs. Knapp, Lopez and Savage), Drs. Moisan and Adams, and the secretary. In executive session, the members discussed the plaintiffs' quality of care, including inappropriate use of lung scans and medications; excessive use of diagnostic tests, pacemakers and pulmonary angiograms; unsubstantiated diagnoses; and improper testing and treatment. Specific charts were not discussed. After the executive session the excluded persons were called back to the meeting. The department of medicine, by a majority vote, recommended that the plaintiffs' applications for reappointment be denied.

At a meeting of the medical executive committee on February 23, 1982, there was a discussion and a review of the department of medicine recommendations that the plaintiffs not be reappointed to the medical staff. The plaintiffs had submitted a report outlining their complaints to the medical executive committee. The medical executive committee voted, by a majority, to deny the plaintiffs' applications for reappointment.

On February 23, 1982, Sister Wright notified the plaintiffs as follows:

> "Pursuant to Article VI, 'Medical Staff Reappointment,' Section 3 - *Medical Executive Committee Action*, I am notifying you that the Medical Executive Committee voted to not reappoint you to the Medical Staff of Palos Community Hospital. Section 3 states: *** 'the affected practitioner shall be entitled to notice and a hearing as provided by Article IX of these By-laws.'
>
> Please consider this letter formal notice of an adverse decision with regard to your reappointment, and notification of your right to a hearing as stated in Article IX, 'Hearing and Appellate Review', Section 5 — *Request for a Hearing*. Section 5 states:
>
> '(a) The President shall be responsible for the giving of prompt written notice of an adverse decision to any affected practitioner who is entitled to a hearing or appellate review.
>
> (b) A practitioner who fails to make a written request for a hearing within 30 days after receipt of the notice above provided shall be deemed to have waived his right to a hearing and all subsequent rights for a hearing and/or appellate review.' "

On March 10, 1982, Sister Wright received the following letter

dated March 1, 1982, from the plaintiffs:

> "[We] received your notice of adverse action by the Executive Committee and demand all rights, hearings, and appeals pursuant to the By-Laws. Please contact [us] to determine a mutually convenient date for the hearing, to advise [us] of the issues before the hearing committee, to provide [us] with all documents that will be considered before the hearing committee, to advise [us] concerning the members of the hearing committee, and to provide [us] with a list of witnesses that will be called before the hearing Committee."

She notified them on March 23, 1982, that the hearing would be held on April 7, 1982. The notice included six specific charges (overutilization of the hospital, overutilization of tests, inappropriate use of medication, inappropriate use of lung scans, unsubstantiated diagnoses and inadequate ventilatory management) and a representative list of the 38 charts which had been examined by Dr. Scheiner or Dr. Moisan or had been discussed at departmental meetings.

On April 1, 1982, in response to the Moisan audit and the increased complexity of mechanical ventilators, Palos instituted a new requirement that all physicians specifically qualify for the privilege of writing ventilation orders.

On April 8, 1982, the *ad hoc* hearing panel conducted a hearing. The plaintiffs and Palos were represented by legal counsel. Dr. Wilcox of the medical executive committee described the proceedings to date. A discussion ensued and memoranda prepared by the plaintiffs were accepted for consideration. Individual charts were not reviewed. Dr. Lopez conceded that the hospital may audit any doctor without notifying him until a deviation is found. During the meeting, he requested and was denied a continuance. Dr. Wilcox stated that the charges against the plaintiffs were based on the observations of their methods of practice by their peers over a 10-year period. Dr. Knapp accused the hospital of harassing his group for 10 years. The committee subsequently met at an executive session and, after discussion, voted unanimously to affirm the recommendations of the medical executive committee that the plaintiffs not be reappointed.

On April 27, 1982, the medical executive committee reviewed the report of the *ad hoc* hearing panel and the supporting documents. The medical executive committee confirmed the recommendations for non-reappointment of the plaintiffs.

On April 30, 1982, after consideration of the recommendations and documentary evidence including the Moisan and Scheiner audits, the Board voted not to reappoint the plaintiffs to the medical staff.

On the same day, Sister Wright sent the following letter to the plaintiffs advising them of the Board's decision:

"In accordance with the Medical Staff Bylaws, Article VI, Section 3, I am hereby notifying you that the Board of Directors has voted not to reappoint you to the Medical Staff of Palos Community Hospital.

This letter is the formal notice of the Board's adverse decision regarding your reappointment and also serves as notification of your right to a hearing as stated in Article IX of the Medical Staff Bylaws. As stated in the aforementioned Bylaws:

'(a) The president shall be responsible for a · giving of prompt written notice of an adverse decision to any affected practitioner who is entitled to a hearing or appellate review.

(b) A practitioner who fails to make written request for a hearing within 30 days after receipt of the notice above provided shall be deemed to have waived his right to a hearing and all subsequent rights to a hearing or appellate review.' "

On May 25, 1982, Sister Wright received the following letter dated May 21, 1982, from plaintiff Dr. Savage:

"Dear Sister Wright:

I received your April 30, 1982 letter notifying me that the Board of Directors has voted not to reappoint me to the medical staff of Palos Community Hospital. I protest this decision and hereby make written request for a hearing pursuant to the By-Laws."

On June 7, 1982, Sister Wright sent the following letter to the plaintiffs:

"Please be advised that in response to your request of May 21, 1982, an Appellate Review Committee ('the Committee') will be convened pursuant to Article IX, Section 10 of the Medical Staff Bylaws, to consider the adverse decision by the Board of Directors of Palos Community Hospital, not to reappoint you to the medical staff.

The Committee will meet on June 18, 1982, at 9:00 a.m. in the Board Room of Palos Community Hospital, 80th Avenue at McCarthy Road, Palos Heights, Illinois.

The Committee will be selected in accordance with Article IX, Section 10(d) of the Medical Staff Bylaws, and you will be given their names as soon as they are appointed.

Prior to the meeting, you have the right to review all reports, records, transcripts and any other materials that were considered by the Ad Hoc Hearing Panel which considered your

reappointment at the hearing on April 7, 1982. You may also submit a written statement presenting arguments on your behalf. To ensure that the record is complete and that you are given every opportunity to present your case, you may also submit to the Committee any other material that you believe supports your position.

Please be advised that as set forth in Article IX, Section 1, pending completion of this review process, your medical staff privileges shall continue unchanged.

Should you have any questions or comments regarding any aspect of this letter or the conduct of the Appellate Review you have requested, please do not hesitate to raise them prior to the meeting. Communications from your attorney should be directed to the attorney for the Hospital as follows:

E. Michael Kelly, Esq.
Hinshaw, Culbertson, Moelmann, Hoban and Fuller
69 West Washington Street
Chicago, Illinois 60602
(312) 630-3224."

The appellate review committee met on June 18, 1982, and heard allegations from the plaintiffs' attorney that the plaintiffs' rights as well as the Palos bylaws had been violated. Drs. Knapp and Savage made statements to the committee. The committee granted to the plaintiffs an additional 21 days in which to make any further oral or written presentations.

On July 9, 1982, the appellate review committee convened again and accepted a memorandum from the plaintiffs which urged that they be reappointed to the medical staff and alleged violations of their rights. The committee went into executive session and voted unanimously in favor of nonreappointment of the plaintiffs.

On July 14, 1982, the Board of Directors voted not to reappoint the plaintiffs to the medical staff. The plaintiffs were immediately notified of the Board's action.

On July 15, 1982, the trial court entered a temporary restraining order enjoining the defendants from denying the plaintiffs full staff privileges at Palos with the exception of ventilatory therapy.

The plaintiffs filed an amended complaint in circuit court on July 20, 1982, alleging that Palos had violated its bylaws in not reappointing them to its staff. The amended complaint joined as defendants Dr. Scheiner and nine physicians on the committees in the peer review process.

On July 30, 1982, after a five-day hearing, the trial court dis-

solved the temporary restraining order and entered a preliminary injunction reinstating the plaintiffs to the medical staff with full privileges as had existed on January 27, 1982. The trial court incorporated into its order the court's findings of fact and conclusions of law which it made on July 29, 1982. In light of the April 1, 1982, hospital requirement regarding ventilatory privileges, the injunction placed the plaintiffs in the position of being the only three doctors on the medical staff able to write ventilation orders without being specifically qualified.

Palos contends that the trial court abused its discretion in granting the injunction because the hospital did not violate its bylaws in not reappointing the plaintiffs to its staff. The granting of a temporary injunction is within the sound discretion of the trial court, and unless there is an abuse of discretion, the reviewing court will not set it aside. (*Lonergan v. Crucible Steel Co. of America* (1967), 37 Ill. 2d 599, 229 N.E.2d 536; *Houseknecht v. Zagel* (1983), 112 Ill. App. 3d 284, 445 N.E.2d 402.) In order that a preliminary injunction may issue, the plaintiff must establish by a preponderance of the evidence that (1) a certain and clearly ascertained right needs protection, (2) irreparable injury will occur without the injunction, (3) no adequate remedy at law exists, and (4) there is probability of success on the merits of the case. *Hydroaire, Inc. v. Sager* (1981), 98 Ill. App. 3d 758, 424 N.E.2d 719.

■ It is well established that a private hospital's refusal to appoint a physician to its medical staff is not subject to judicial review. (*Settler v. Hopedale Medical Foundation* (1980), 80 Ill. App. 3d 1074, 400 N.E.2d 577; *Jain v. Northwest Community Hospital* (1978), 67 Ill. App. 3d 420, 385 N.E.2d 108.) The rationale behind this rule is the court's unwillingness to substitute its judgment for that of private hospital authorities. (*Jain v. Northwest Community Hospital* (1978), 67 Ill. App. 3d 420, 385 N.E.2d 108.) The only exception to the rule on non-review that has developed in Illinois is that where a physician's existing staff privileges are revoked or reduced, a private hospital must follow its own bylaws in doing so or be subject to limited judicial review. *Jain v. Northwest Community Hospital* (1978), 67 Ill. App. 3d 420, 385 N.E.2d 108.

■ The facts in the instant case indicate full compliance with the hospital bylaws. The evidence shows that the plaintiffs' performances were evaluated in their annual review by the privilege evaluation committee, the department of medicine, and the medical executive committee. At the plaintiffs' request and in accordance with the bylaws, the decision of the medical executive committee was reviewed by an

*ad hoc* hearing panel. The panel voted unanimously to affirm the recommendations of the medical executive committee that the plaintiffs not be reappointed. When that result was forwarded to the Board and the Board confirmed it, the plaintiffs were immediately notified. The plaintiffs requested and were granted appellate review. All of these events took place in accordance with and in full satisfaction of the bylaw requirements.

The plaintiffs allege seven specific bylaw violations. First, they charge that no committee reviewed any charts of their patients, in violation of article VII, section 1(c). Article VII, section 1(c) provides that periodic redetermination of clinical privileges shall be based on direct observation of care provided by review of patients' records, medical staff records and other pertinent information. As the members of every committee in the peer review process had access to the patients' charts, and discussed the charts, the Moisan audit, Dr. Scheiner's report and their own observations, there was no violation of article VII, section 1(c).

Second, the plaintiffs complain they were not given notice of or hearings on the adverse decisions made at the February 10, 1982, privilege evaluation committee meeting, the February 18, 1982, department of medicine meeting or the February 23, 1982, medical executive committee meeting, in violation of article IX, section 3. That provision grants the right to request a hearing to a practitioner who has received notice of an initial adverse decision affecting his status or clinical privileges. The results of the privilege evaluation committee and department of medicine meetings were nonbinding recommendations for the consideration of the medical executive committee. They had no effect on the plaintiffs' status or clinical privileges. Thus they did not give rise to any right to notice or a hearing. As to the medical executive committee meeting, contrary to the plaintiffs' assertion, Sister Wright sent them notice in writing of the adverse decision made by the medical executive committee on the day it was made, February 23, 1982. The plaintiffs sent a letter dated March 1, 1982, which was received on March 10, 1982, requesting a hearing. On March 23, 1982, Sister Wright advised the plaintiffs that the hearing would be on April 7, 1982. Article IX, section 3 was not violated.

Third, the plaintiffs contend that no committee issued findings adverse to them, in violation of certain bylaws. The evidence indicates that on February 23, 1982, the medical executive committee reviewed the recommendations of the department of medicine and reviewed plaintiffs' report outlining their complaints. The medical executive committee then made a finding adverse to the plaintiffs as indicated

by the majority vote of the committee to deny the plaintiffs' applications for reappointment.

The evidence further discloses that on April 27, 1982, the medical executive committee reviewed the report of the *ad hoc* hearing panel and the supporting documents. The committee confirmed the recommendations for nonreappointment of the plaintiffs.

Fourth, the plaintiffs assert that the hearing of the *ad hoc* hearing panel and the appellate hearing were not conducted within the time limits set forth in article IX, sections 6(a) and 10. Section 6(a) provides that the hearings must be scheduled within 14 days after receipt of the practitioner's written request for the hearing, and the hearing must be held not less than 21 days nor more than 42 days from the date the request is received. Section 10 provides that a practitioner shall have 14 days to request in writing an appellate review after his receipt of notice of the adverse action. Sister Wright received the plaintiffs' request for an *ad hoc* hearing on March 10, 1982. On March 23, 1982, she notified them of the hearing scheduled for April 7, 1982. This notification was within 14 days of the receipt of the request for a hearing. The hearing was held on April 8, 1982, 29 days from the date of the receipt of the request. Sister Wright received the plaintiffs' request for appellate review on May 25, 1982. She informed them 13 days later, on June 7, 1982, that the appellate review was scheduled for June 18, 1982. The appellate review committee met on June 18, 1982, 24 days from the receipt of the request. There was no violation of the bylaws.

Fifth, the plaintiffs allege that the bill of particulars they received was "grossly inadequate" in violation of article IX, section 9(b). There is no section 9(b) to article IX. Article IX, section 9B, deals with witnesses and evidence at the *ad hoc* hearing. However, article IX, section 6(b), is the only bylaw which addresses a "bill of particulars." It requires that the practitioner receive notice of the acts or omissions with which he is being charged, a list of specific or representative charts being questioned, and/or other reasons or subject matter that was considered in making the adverse decision. The plaintiffs received notice of six specific charges and a list of the 38 charts being questioned. There was no violation of the bylaws.

Sixth, the plaintiffs contend that they were not allowed to examine witnesses at the *ad hoc* hearing in violation of article IX, section 9(b) [*sic*]. Article IX, section 9B grants participants the right to question each other's witnesses. The plaintiffs are apparently referring to a question Dr. Lopez put to Dr. Wilcox. At the request of the medical executive committee and the medical staff, Dr. Wilcox read a report

of the charges, the allegations and the proceedings to date. At the conclusion of Dr. Wilcox' report, Dr. Lopez inquired as to whether Dr. Wilcox was present at the January 1982 privilege evaluation committee meeting. Dr. Wilcox responded that he was not present at that meeting. Dr. Caliendo stated that as Dr. Wilcox had merely read a report, it would be inappropriate to question him individually. Dr. Lopez said, "Okay," and instead presented minutes of that privilege evaluation committee meeting. There was no substantial violation of article IX, section 9B.

Finally, the plaintiffs complain that they were not allowed to discuss their charts at the *ad hoc* hearing, in violation of article IX, section 9(b) [*sic*]. Article IX, section 9B, grants participants the right to introduce relevant oral and documentary evidence. Dr. Caliendo announced that individual charts would not be examined at the meeting. According to the transcript of the meeting, the plaintiffs' patients' charts, as well as the audit and report based thereon, were mentioned several times by the plaintiffs and the other participants during the hearing. At the hearing, there was no request made to discuss the plaintiffs' charts. There was no substantial violation of article IX, section 9B.

The plaintiffs further allege that their right to regular procedures as established by custom, usage and practice has been violated. As we have noted, any private hospital action which does not violate its bylaws is beyond the scope of judicial review.

▮ As Palos did not violate its bylaws in not reappointing the plaintiffs to its medical staff, its actions are not subject to judicial review. The plaintiffs have not established a likelihood of success on the merits of their case. For these reasons, the trial court abused its discretion in granting the preliminary injunction.

For the foregoing reasons, the order of the circuit court of Cook County is reversed.

Reversed.

RIZZI, P.J., and O'CONNOR, J., concur.