FRANK RODRIGUEZ-ERDMAN, Plaintiff-Appellant, v. RAVENSWOOD HOSPITAL MEDICAL CENTER, Defendants-Appellees.

First District (5th Division)   No. 87—0257

Opinion filed November 13, 1987.

John J. Lowrey and Mary Jo Smerz, both of Law Offices of John J. Lowrey, P.C., of Chicago, for appellant.

James C. Murray, Jr., Michael R. Callahan, and Laurence H. Lenz, Jr., all of Katten, Muchin & Zavis, of Chicago, for appellees.

Kay E. Pinkus and Daniel J. Mulvanny, both of Naperville, for appellee Illinois Hospital Association.

Rudolf G. Schade, Jr., Michael J. Gallagher, and Judith A. Schieber, all of Cassiday, Schade & Gloor, of Chicago, for appellee Metropolitan Chicago Healthcare Council.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff, Frank Rodriguez-Erdman, M.D., appeals from the dismissal of his complaint against Ravenswood Hospital Medical Center, Ravenswood Health Care Corporation, Thomas E. McGough, David M. Murdoch, Henry J. Kutsch, Steven Czarnecki, M.D., Robert Griffin, M.D., and James Gallai, M.D. (defendants), which he filed following the termination of his privileges on the medical staff of the defendant hospital.

The four-count complaint, filed on September 6, 1985, sought compensatory and punitive damages on theories of retaliatory discharge, breach of an employment contract, intentional interference with prospective business advantage and intentional infliction of emotional distress. Plaintiff, a physician and board-certified specialist in internal medicine, was appointed to the provisional medical staff of Ravenswood Hospital on October 1, 1982. Provisional staff appointments at Ravenswood are probationary positions which terminate automatically after two years if the physician is not advanced to another category of staff membership. Beginning sometime in 1983, plaintiff expressed criticisms, at first orally and later in written form, to various hospital personnel, including the chairman of the department of medicine, who was also the head of the internal medicine residency program, concerning the quality of care rendered to his patients by certain residents in the residency program. In November 1983, a review committee was established to investigate the charges made by plaintiff and certain other physicians in the department of internal

medicine as well as various countercharges made by the residents against plaintiff. In June 1984, the review committee issued a report in which it found that some of plaintiff's criticisms were substantiated by a review of the charts of the patients involved. The report noted, however, that responsibility for the management of cases rested with plaintiff as the attending physician rather than with the residents. Also included in the report were findings by the committee that by voicing his concerns "outside of the acceptable peer review and quality assurance process," rather than through appropriate channels, plaintiff did not abide by the acceptable levels of professional conduct set forth in the medical staff bylaws and the rules and regulations of the hospital as he had agreed to do by accepting privileges on the medical staff; that he had contributed to a "certain degree of low morale among the residents"; that his style of patient management "[was] not conducive to either the advancement of their education or effective assistance in the provision of quality medical care"; that "his long years as an academic *** contributed to a lack of interaction with patients in a bedside capacity [which] led at least in part to the unacceptable degree of friction *** between [him] and the residents ***"; and that "the behavior and attitude exhibited [by him] toward the residents *** [was] questionable, disruptive and demeaning." The committee recommended, *inter alia*, that the department classification and advisory committee consider the need for disciplinary action both as to the residents and to plaintiff because of his extraordinary method of communicating criticism about the medical care provided by them. Plaintiff alleged that in retaliation for his criticisms his privileges were terminated, without a hearing, on November 30, 1984, but, following his protest, were temporarily reinstated on December 14, 1984. The matter was then directed to the classification and advisory committee of the department of medicine for reconsideration. According to plaintiff, the committee conducted a meeting on the matter at which he was allowed to have counsel present, but only in the capacity of an observer. On April 30, 1985, the board of directors notified plaintiff that it had concurred in the recommendation of the department of medicine and the medical board not to appoint him to the courtesy staff and that his membership and privileges on the medical staff were therefore terminated, effective that date.

Following a hearing, the trial court granted defendants' motion to dismiss on the basis of section 10.2 of the Illinois Hospital Licensing Act (Ill. Rev. Stat. 1985, ch. 111½, par. 151.2), which bars actions for civil damages, and this appeal followed.

OPINION

■ Plaintiff first contends that section 10.2 applies only to remedial actions taken by committees reviewing situations relating to quality control in patient care and to professional incompetence. He argues that because the termination of his staff privileges had no relation to his mental or physical competence or his treatment of patients, but, rather, was in retaliation for his criticisms of the residency program, section 10.2 is inapplicable to his action.

We disagree. Section 10.2 governing the liability of individuals and hospitals became effective on August 16, 1985, and provides:

> "No hospital and no individual who is a member, agent, or employee of a hospital, hospital medical staff, hospital administrative staff, or hospital governing board shall be liable for civil damages as a result of the acts, omissions, decisions, or any other conduct of a medical utilization committee, medical review committee, patient care audit committee, medical care evaluation committee, quality review committee, credential committee, peer review committee, or any other committee whose purpose, directly or indirectly, is internal quality control or medical study to reduce morbidity or mortality, or for improving patient care within a hospital, or the improving or benefiting of patient care and treatment, whether within a hospital or not, or for the purpose of professional discipline. Nothing in this Section shall relieve any individual or hospital from liability arising from treatment of a patient." Ill. Rev. Stat. 1985, ch. 111½, par. 151.2.

Contrary to his interpretation, we think it is clear from the use of disjunctive phrases which refer generally to "improving and benefiting patient care and treatment" and "for the purpose of professional discipline" that the immunity provided in section 10.2 is not limited only to decisions concerning impaired or medically incompetent physicians and that plaintiff's action for monetary damages, arising from defendants' decision not to advance him to nonprobationary staff membership for reasons which, he asserts, are unrelated to his ability as a physician, is also barred by the statute.

Plaintiff further contends that section 10.2 constitutes "special legislation" in that it confers a special benefit and exclusive privilege on hospitals because it allows them to revoke a physician's staff privileges with impunity and to thereby "destroy the income and reputations of doctors" without liability. He maintains that no other class of tortfeasors has such a privilege.

■ "Special legislation" has been defined by our supreme court

as that which " 'confers a special benefit or exclusive privilege on a person or a group of persons to the exclusion of others similarly situated. [Citation.] It arbitrarily, and without a sound, reasonable basis, discriminates *in favor of* a select group.' " (Emphasis in original.) *Jenkins v. Wu* (1984), 102 Ill. 2d 468, 478, 468 N.E.2d 1162, 1167, quoting *Illinois Polygraph Society v. Pellicano* (1980), 83 Ill. 2d 130, 414 N.E.2d 458.

In *Jenkins*, the plaintiff in a medical malpractice action challenged, as "special legislation," section 8—2101 of the Code of Civil Procedure, which provides:

> "All information, interviews, reports, statements, memoranda or other data of [medical agencies, societies and peer review committees] used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care, shall be privileged, strictly confidential and shall be used only for medical research, the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges, except that in any hospital proceeding to decide upon a physician's staff privileges, *or in any judicial review thereof, the claim of confidentiality shall not be invoked to deny such physician access to or use of data upon which such a decision was based.*" Ill. Rev. Stat. 1985, ch. 110, par. 8—2101.

She argued that there was no sound, reasonable basis for denying her access to the same data available to physicians whose staff privileges were limited or revoked.

The supreme court upheld the statute as constitutional, stating that its purpose was to "ensure the effectiveness of professional self-evaluation, by members of the medical profession, in the interest of improving the quality of health care [and] is premised on the belief that, absent the statutory peer-review privilege, physicians would be reluctant to sit on peer-review committees and engage in frank evaluations of their colleagues." (102 Ill. 2d at 480, 468 N.E.2d at 1168.) The court noted that the legislature's intent was to promote quality health care by encouraging physicians to police themselves without fear that the information obtained and exchanged in the course of peer review could then be used as evidence in medical malpractice actions while nevertheless protecting the due process rights of a physician in termination proceedings by inserting the exception allowing him access to the information upon which the decision to limit or revoke his staff privileges was based.

■ We think it is apparent from the similarity of the language

used in section 10.2 to that of section 8—2101 and from the fact that the Hospital Licensing Act was included in chapter 111½, which relates to "Public Health and Safety," that the legislative objective in providing hospitals and physicians with immunity from liability for civil damages based on actions taken by them in the peer-review process is, like that of section 8—2101, to foster effective self-policing by members of the medical profession in matters unique to that profession and to thereby promote the legitimate State interest in improving the quality of health care in Illinois. Furthermore, since the immunity is granted to all hospitals and physicians—including plaintiff—who participate in peer review, his argument that "it discriminates in favor of a select group" is without merit.

Plaintiff further argues, however, that assuming the objective of section 10.2 is the improvement of health care by encouraging frank peer review, the termination of his staff privileges because of criticisms he made in an effort to point out the inadequacies of the patient care rendered by the residents not only contradicted, but actually subverted, that purpose.

■ Although plaintiff couches his argument in terms of statutory construction and legislative intent, it is apparent that what he seeks . is judicial review of defendants' decision not to advance him to a non-probationary medical staff position. Initially, we note that a division of this court recently held that judicial review should extend to the question whether a private hospital's decision to exclude a physician from staff membership was arbitrary, capricious and unreasonable. (*Barrows v. Northwestern Memorial Hospital* (1987), 153 Ill. App. 3d 83, 505 N.E.2d 1182.)[1] We note, however, that the weight of authority is that the scope of judicial review in cases in which a private hospital has denied staff membership or revoked or reduced a physician's staff privileges is limited to the issue whether in doing so it complied with its bylaws. *Jain v. Northwest Community Hospital* (1978), 67 Ill. App. 3d 420, 385 N.E.2d 108, *appeal denied* (1979), 75 Ill. 2d 591; *Lapidot v. Memorial Medical Center* (1986), 144 Ill. App. 3d 141, 494 N.E.2d 838; *Knapp v. Palos Community Hospital* (1984), 125 Ill. App. 3d 244, 465 N.E.2d 554; *Spencer v. Community Hospital* (1980), 87 Ill. App. 3d 214, 408 N.E.2d 981; *Settler v. Hopedale Medical Foundation* (1980), 80 Ill. App. 3d 1074, 400 N.E.2d 577; *Mauer v. Highland Park Hospital Foundation* (1967), 90 Ill. App. 2d 409, 232 N.E.2d 776.

---

[1]The parties have informed us that the *Barrows* case is currently pending in the Illinois Supreme Court.

In this case, plaintiff's complaint did not allege noncompliance with the hospital bylaws nor were they even included in the pleadings; and while he did assert in his brief that his "dismissal was predicated upon the bad faith of the defendants and was not in compliance with the by-laws [sic]," he conceded in arguments before us that his action is not based upon a violation thereof. Thus, under the accepted rule, defendants' decision is nonreviewable.

In a related contention, plaintiff posits that because there is no basis upon which he can maintain an action for violation of the by-laws, and because section 10.2 precludes recovery of money damages, he is left without a remedy. He argues that section 10.2 must, therefore, be construed as substantive in nature and be given only prospective application.

As noted earlier, plaintiff filed this action on September 6, 1985, three weeks after the effective date of section 10.2. It is his position, however, that since his claims arose on May 1, 1985, when his staff privileges were formally terminated, section 10.2 is inapplicable and was improperly given retroactive effect by the trial court.

While the general rule is that a statute is ordinarily construed as being prospective in its operation, an amendatory act may be applied retroactively where the statute affects only the remedy or law of procedure unless such application of the change in procedure or existing remedies results in the deprivation of a vested right. (*Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373, 415 N.E.2d 1034.) A vested right is more than a mere expectation based upon the anticipated continuance of the existing law; it must have become a title, legal or equitable, to the present or future enjoyment of property (*Board of Managers of Dominion Plaza One Condominium Association No. 1-A v. Chase Manhattan Bank, N. A.* (1983), 116 Ill. App. 3d 690, 452 N.E.2d 381), as the right invoked (*General Telephone Co. v. Johnson* (1984), 103 Ill. 2d 363, 382-83, 469 N.E.2d 1067, 1076).

Section 10.2 merely precludes recovery of civil damages as a remedy in cases arising out of the acts and decisions of hospitals and individuals in internal review situations. It does not, as in the cases cited by plaintiff, destroy all causes of action or take away a constitutionally protected, vested right. As stated above, limited judicial review is available in appropriate cases. In this case it was plaintiff's decision not to pursue another form of relief. Whether that decision was based on his determination that because there had been no violation of the hospital bylaws he could not prevail in a different form of action or, as is suggested by his brief, that he did not want the type of relief, such as an injunction to reinstate him, that might have been

granted if he had prevailed in such an action is immaterial. Thus, we find no error in the trial court's determination that section 10.2 of the Hospital Licensing Act bars plaintiff's action for civil damages.

For the reasons stated, the order dismissing plaintiff's complaint is affirmed.

Affirmed.

McNAMARA, P.J., and PINCHAM, J., concur.