GEORGE SZCZERBANIUK, Plaintiff-Appellant, v. MEMORIAL HOSPI-
TAL FOR McHENRY COUNTY *et al.*, Defendants-Appellees.

Second District   No. 2—88—0619

Opinion filed March 10, 1989.

Norman J. Lerum, of Carponelli, Krug & Lerum, of Chicago (Stephen P. Carponelli, of counsel), for appellant.

James D. Fiffer, of Wildman, Harrold, Allen & Dixon, of Chicago (Brian W. Lewis, of counsel), for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, George Szczerbaniuk, M.D., appeals from orders of the circuit court of McHenry County dismissing count II of his complaint and granting summary judgment on count I in favor of defendants, Memorial Hospital for McHenry County (Memorial) and Philip Dionne.

The following issues are raised on appeal: (1) whether section 10.2 of the Hospital Licensing Act (Ill. Rev. Stat. 1987, ch. 111½, par. 151.2) precludes an action for civil damages against defendants; (2) whether defendants were precluded by the doctrine of judicial estoppel from asserting section 10.2 as a defense; and (3) whether the circuit court erred in dismissing count II of plaintiff's complaint, alleging breach of Memorial's bylaws.

The pleadings and excerpts of deposition testimony included in the record on appeal establish the following pertinent facts. Plaintiff is a physician licensed to practice in Illinois. Memorial is a municipal hospital corporation organized and licensed under Illinois law. On December 1, 1986, plaintiff and Memorial executed a written contract

entitled "Radiology Service Agreement." This three-year agreement provided, in pertinent part, that plaintiff, functioning as an independent contractor in the practice of radiology, would discharge the duties of radiology service director at Memorial. According to the agreement, Memorial would furnish and maintain space, equipment, supplies, and staffing necessary to the operation of the radiology service. The agreement further provided that plaintiff was to be the exclusive provider of radiology services to Memorial. A termination clause provided that upon good cause shown and upon consultation with the executive committee of the board of directors of the hospital, either party shall be entitled to cancel the agreement upon 180 days' written notice to the other party. Further, this clause provided that "[m]embership on the Medical Staff of the Hospital, in the event of the termination of this Agreement, shall be terminated."

Memorial has enacted bylaws which, as stated therein, form the basis of the medical staff's accountability to the board of directors for medical care of patients in the hospital and the conduct of its organization. The bylaws of the medical staff of Memorial define the term "medical staff" as "all medical practitioners and duly licensed dentists who are privileged to attend patients in the hospital." The general procedures for discipline of staff members are outlined in article III, paragraph 7, of the bylaws, which provides that a staff member who is the subject of a complaint shall be notified in writing of the complaint and shall be entitled to hearings before a joint session of the credentials committee and executive committee of the medical staff and, if further action is necessary, before the full medical staff. The bylaws further provide that the medical staff shall forward a recommendation to the executive committee of the board of directors and that the staff member shall be entitled to appear before the executive committee, which shall thereafter recommend that the board of directors accept the recommendation of the medical staff or refer the matter back to the medical staff for further consideration.

Article III, paragraph 3B, provides that "final authority on appointments, reappointments, suspension or termination of appointments shall rest exclusively with the Board of Directors." Article III, paragraph 5C, provides that "[t]he Executive Committee or Credentials Committee of the Board of Directors, or the Executive Director of the hospital, may initiate an inquiry with respect to the category, service or privileges of any member of the medical staff."

Following an investigation by defendant, Philip Dionne, chief executive officer of Memorial, of allegations of sexual harassment made by certain employees against plaintiff, Dionne informed plaintiff on

August 21, 1987, that the radiology service agreement was terminated. Excerpts of deposition testimony of Mr. Baringer, a member of the executive committee of the board of directors, indicate that the executive committee may have informally authorized Dionne to respond to the charges against plaintiff as he saw fit and that the executive committee concurred in the decision to discharge plaintiff. The complaints were not referred at any time to any of the committees of the medical staff.

On September 3, 1987, plaintiff filed suit against defendants and Alfonso de la Morena. De la Morena was later voluntarily dismissed from the case. Count I of plaintiff's complaint alleged breach of contract and count II alleged breach of Memorial's bylaws. Both counts sought injunctive relief and damages. Defendants successfully moved to dismiss all claims for equitable relief and to dismiss count II of plaintiff's complaint, which alleged breach of bylaws. Thereafter, defendants successfully moved for summary judgment on the breach of contract count, arguing that section 10.2 of the Hospital Licensing Act precluded an action for civil damages against them.

Plaintiff first contends that the circuit court erred in granting summary judgment to defendants on his breach of contract count. Plaintiff advances several arguments in support of the proposition that section 10.2 does not confer immunity upon defendants. Plaintiff contends that the process leading to his termination, because violative of due process, vitiates the immunity provided under section 10.2, that section 10.2 cannot be applied to defeat what he characterizes as a "vested right" to 180 days' written notice prior to termination pursuant to his contract with Memorial, and that staffing decisions based on allegations of sexual harassment of employees are not related to protecting patient care and are not within the purview of section 10.2. Plaintiff also argues that section 10.2 only confers immunity from liability arising from the acts of certain types of protected committees and that no such committee was involved in the termination of his contract. We believe this last contention is dispositive, and, hence, we need not address the balance of his arguments.

■ Section 10.2 of the Hospital Licensing Act currently provides:

"Sec. 10.2. Because the candid and conscientious evaluation of clinical practices is essential to the provision of adequate hospital care, it is the policy of this State to encourage peer review by health care providers. Therefore, no hospital and no individual who is a member, agent or employee of a hospital, hospital medical staff, hospital administrative staff, or hospital governing board shall be liable for civil damages as a result of

the acts, omissions, decisions, or any other conduct of a medical utilization committee, medical review committee, patient care audit committee, medical care evaluation committee, quality review committee, credential committee, peer review committee, or any other committee whose purpose, directly or indirectly, is internal quality control or medical study to reduce morbidity or mortality, or for improving patient care within a hospital, or the improving or benefiting of patient care and treatment, whether within a hospital or not, or for the purpose of professional discipline. Nothing in this Section shall relieve any individual or hospital from liability arising from treatment of a patient." (Ill. Rev. Stat. 1987, ch. 111½, par. 151.2.)

Although the first sentence of this section, which states the policy of the provision, was enacted after plaintiff's cause of action arose, it is an appropriate source for determining the original legislative intent of the statute. (See *People v. Badoud* (1988), 122 Ill. 2d 50, 56, 521 N.E.2d 884.) Further, in construing a statute, a court is to ascertain and to give effect to the legislature's intent. (*Gill v. Miller* (1983), 94 Ill. 2d 52, 56, 445 N.E.2d 330.) In ascertaining the legislature's intent, we should consider the statute in its entirety, noting the subject it addresses and the legislature's apparent objective in enacting it. *Gill*, 94 Ill. 2d at 56, 445 N.E.2d at 333.

Plaintiff maintains that the termination of his privileges was not the result of any action by any committee of a type specified in section 10.2, but rather was the result of unilateral action by hospital administrator Philip Dionne. Defendants respond that involvement of the executive committee of Memorial's board of directors satisfies the requirement of committee action and falls within the language of section 10.2 of "any other committee whose purpose, directly or indirectly" is for "professional discipline." Excerpts of the depositions reveal that the executive committee of the board informally delegated authority to Dionne to take whatever actions he deemed appropriate with respect to the allegations against plaintiff and that the executive committee informally ratified Dionne's decision to terminate the agreement with plaintiff and plaintiff's hospital privileges. The executive committee was, however, never apprised of the specific allegations against plaintiff, and plaintiff never appeared before the executive committee. Under these circumstances, it is difficult to characterize the termination of plaintiff's privileges as the result of an act, omission, decision, or other conduct of the executive committee. Rather, we are inclined to agree with plaintiff that, essentially, only unilateral action by an individual administrator was involved. Insofar

as section 10.2 clearly contemplates action by committees, we are hesitant to apply it to immunize conduct of an individual acting only pursuant to an informal delegation of authority by an uninformed committee.

Even if the purported termination of plaintiff's contract and the termination of his privileges are properly characterized as resulting from an act of the executive committee of the board of directors, section 10.2 would not provide immunity in the instant case because the executive committee was not acting as one of the types of committees specified in the statute.

Section 10.2 is applicable to certain specifically designated types of committees, including, among others, peer review committees, credential committees and medical utilization committees. Clearly no such committee participated in the decision with respect to plaintiff. Section 10.2 is also applicable to "any other committee whose purpose, directly or indirectly, is internal quality control or medical study to reduce morbidity or mortality, or for improving patient care within a hospital, or the improving or benefiting of patient care and treatment, whether within a hospital or not, or for the purpose of professional discipline." (Ill. Rev. Stat. 1987, ch. 111½, par. 151.2.) Defendants specifically note its applicability to committees which deal, directly or indirectly, with professional discipline and contend that the executive committee's role in the disciplinary process places it within the ambit of section 10.2. It is true that under Memorial's bylaws, the full board of directors has final authority with respect to disciplinary action against staff members and has the power to initiate inquiries concerning staff conduct and refer these matters to the medical staff. While the board of directors plays a role in the professional discipline process, the legislative purpose underlying section 10.2 does not support its application to the disciplinary action taken here solely by the executive committee of the board of directors of the hospital without some act or decision of peer review by health care providers.

■■■ The legislative objective of section 10.2 is " 'to foster effective self-policing by members of the medical profession in matters unique to that profession and to thereby promote the legitimate State interest in improving the quality of health care in Illinois.' " (*Knapp v. Palos Community Hospital* (1988), 176 Ill. App. 3d 1012, 1024, 531 N.E.2d 989, quoting *Rodriquez-Erdman v. Ravenswood Hospital Medical Center* (1987), 163 Ill. App. 3d 464, 470, 516 N.E.2d 731; see also *Barrows v. Northwestern Memorial Hospital* (1988), 123 Ill. 2d 49, 58, 525 N.E.2d 50.) The stated purpose of section 10.2 is "to encourage peer review by health care providers." (Ill. Rev. Stat. 1987, ch.

111½, par. 151.2.) Here, the decision by Memorial's executive committee of its board of directors authorizing Dionne to terminate plaintiff does not come within the immunity granted by section 10.2 as it was not pursuant to any evaluation process of peer review by health care providers. There is nothing in the pleadings or excerpts of the depositions which shows that any peer review process was undertaken which would serve the policy of peer review underlying the purpose of the immunity provided in section 10.2

■ ■ Summary judgment is proper only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867.) Because section 10.2 does not grant immunity to defendants under the facts of this case, defendants were not entitled to judgment as a matter of law, and summary judgment in their favor is reversed. As the immunity from liability for civil damages under section 10.2 was the only basis urged below and on appeal, we have no occasion to decide whether civil damages are otherwise recoverable in connection with the termination of plaintiff-physician's contract and medical staff privileges with Memorial.

As we have decided that section 10.2 is inapplicable in the instant case, it is unnecessary to examine plaintiff's contention that defendants were judicially estopped from raising section 10.2 as a defense.

Plaintiff next contends that the circuit court erred in dismissing count II of his complaint, which alleged that the termination of his medical staff privileges without adherence to the bylaw provisions of Memorial was a breach of the bylaws. He argues that the bylaws form a contract between him and Memorial. The circuit court dismissed this count apparently on the basis that the service agreement, not the bylaws, controlled inasmuch as the agreement contained the following provision relating to medical staff privileges: "Membership on the Medical Staff of the Hospital, in the event of the termination of this Agreement, shall be terminated."

Plaintiff maintains, however, that the hospital bylaws form part of the contract between the hospital and its staff, citing, in particular, *Head v. Lutheran General Hospital* (1987), 163 Ill. App. 3d 682, 516 N.E.2d 921, and *Fahey v. Holy Family Hospital* (1975), 32 Ill. App. 3d 537, 336 N.E.2d 309, and that the termination provision in the agreement must be read to provide that termination of medical staff privileges be in accordance with the bylaws. Defendants respond that the termination provision in the agreement is unambiguous and was bargained for in exchange for plaintiff's exclusive right to provide radiological services at Memorial. Accordingly, defendants contend that

the effect of the agreement was to give up any rights which may be contained in the bylaws and for the parties to be mutually bound by the agreement covering the obligations of the parties.

The agreement is a six-page contract signed by plaintiff and Dionne, as Memorial's chief executive officer, and contains 12 separate clauses. Pertinent hereto, the agreement begins by stating that the parties enter the service agreement "to provide a full statement of their respective covenants and obligations in connection with the operation of the Radiology Service in the Hospital during the term hereof." Further, the agreement provides that plaintiff is acting as an independent contractor in the performance of these duties under the contract. The agreement makes plaintiff the exclusive provider of radiology services at Memorial, setting forth his responsibilities to the hospital and the hospital's obligation to provide space, equipment, supplies, and staffing necessary for the radiology department. The agreement also contains a clause whereby problems relating to the administration of the radiology service which cannot be resolved between plaintiff and the hospital administration be submitted to the executive committee of the board of directors and, ultimately, be resolved by the board of directors, whose decision is binding. The clause further provides that problems relating to plaintiff's clinical responsibilities will be referred to the executive committee of the medical staff for consultation prior to action taken by the board of directors. Termination of the three-year agreement by either party, upon good cause shown, may be made upon 180 days' written notice.

■■ The meaning of a written contract is ordinarily a question of law, and the intention of the parties must be ascertained by the language utilized in the contract itself, not by the construction placed upon it by the parties. (*Lenzi v. Morkin* (1984), 103 Ill. 2d 290, 293, 469 N.E.2d 178.) A contract's meaning must be determined from the words or language used, and a court cannot construe the contract contrary to the plain and obvious meaning of the language. (*Johnstowne Centre Partnership v. Chin* (1983), 99 Ill. 2d 284, 287, 458 N.E.2d 480.) It is presumed that the terms and provisions of a contract are purposefully inserted and that the language was not employed idly. *State Farm Mutual Automobile Insurance Co. v. Schmitt* (1981), 94 Ill. App. 3d 1062, 1065, 419 N.E.2d 601.

■■ Here, an express provision in the agreement provides that membership on the medical staff of the hospital shall terminate upon termination of the agreement. There is no mention in the agreement of the hospital bylaws being applicable to plaintiff. In fact, the agreement recites that it is a full statement of the parties' covenants and

obligations. Moreover, problems relating to radiology service and clinical responsibilities are to be resolved by procedures prescribed in the agreement, which is inconsistent with provisions under the bylaws. The cases relied on by plaintiff, holding that the bylaws form part of the contract between the hospital and its staff, are inapposite as there is no indication in those cases that there also was a contract between the parties which provided for termination of medical privileges. In this case, as contrasted with cases where only medical privileges at a hospital are involved, there is a contract by which plaintiff is to be an independent contractor providing all radiology services to Memorial. Accordingly, count II does not state a cause of action for a breach of the bylaws as the bylaws do not form a part of the agreement between the parties.

Affirmed in part, reversed and remanded in part.

NASH and DUNN, JJ., concur.