CARLITO TABORA, Plaintiff-Appellant, v. GOTTLIEB MEMORIAL HOSPITAL *et al.*, Defendants-Appellees.

First District (6th Division)   Nos. 1—94—0657, 1—94—1165 cons.

Opinion filed March 29, 1996.

110

Laurie Wasserman, of Skokie, and Bruce A. Coane and Joyce Keating, both of Coane & Associates, of Houston, Texas, for appellant.

Harvey J. Cohen, of Aries & Purmal, and David J. Slawkowski, Diane I. Jennings, and Hugh C. Griffin, all of Lord, Bissell & Brook, of Chicago, for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Doctor Carlito Tabora, M.D., appeals the dismissal of certain counts of his second and third amended complaints brought against Gottlieb Memorial Hospital (Gottlieb) and Doctor Fedele Morelli, M.D. (Morelli) after plaintiff's staff privileges at Gottlieb were revoked. The trial court dismissed with prejudice plaintiff's claims of tortious interference with contract, defamation, and intentional infliction of emotional harm, and limited plaintiff's action to allegations that defendants failed to follow procedures prescribed by Gottlieb's bylaws in revoking plaintiff's staff privileges prior to October 1990. We affirm. (Doctor Morelli is now deceased, but his estate has been substituted as defendant.)

Plaintiff's pleadings reveal the following pertinent facts. Plaintiff worked as an anesthesiologist at Gottlieb from 1973 to 1990. During these years, plaintiff was granted privileges for two-year periods, and his last reappointment was for the period of October 1988 through October 1990. On May 21, 1990, Morelli, Gottlieb's medical director at the time, presided over a meeting of the hospital's board of directors, during which Morelli stated that plaintiff was incompetent as an anesthesiologist and that plaintiff falsified patient records. Plaintiff alleges that on May 21, 1990, as a result of Morelli's false claims, he was suspended from practicing medicine at Gottlieb.

Exhibits attached to plaintiff's pleadings reveal that the following events took place after May 21, 1990. By letter dated July 2, 1990, plaintiff was informed that Morelli's complaints had been forwarded to the medical executive committee of Gottlieb and that "the Executive Committee decided not to act on a request for correc-

tive action until an investigation was carried out." The letter also notified plaintiff that "an ad hoc committee has been assigned to evaluate all relevant issues and has requested to meet with you as part of the investigative process." On July 17, 1990, plaintiff was notified by letter that after reviewing the findings of the investigative committee, the medical executive committee would recommend to the board of governors that plaintiff's privileges be terminated. By letter dated September 25, 1990, the board of governors notified plaintiff that it had received, accepted, and affirmed the medical executive committee's recommendation to terminate plaintiff's privileges.

On July 23, 1991, plaintiff filed a complaint at law naming Gottlieb and Morelli as defendants. Plaintiff thereafter filed a first amended complaint on February 21, 1992, and a second amended complaint on February 26, 1993. In his second amended complaint, plaintiff alleged that Gottlieb had breached its contract with plaintiff and violated its bylaws in terminating plaintiff's privileges prior to October 1990 (count I). Plaintiff also asserted that defendants, by and through Morelli's statements and actions, tortiously interfered with plaintiff's contract (count II), defamed plaintiff (count III), and intentionally inflicted emotional harm on plaintiff (count IV).

Gottlieb and Morelli moved to dismiss plaintiff's second amended complaint pursuant to section 2—619 of the Code of Civil Procedure. 735 ILCS 5/2—619 (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 110, par. 2—619). On September 22, 1993, the trial court dismissed with prejudice count II and that portion of count III concerning statements Morelli made to the board of directors, holding that the immunity provisions for peer review in the Hospital Licensing Act (Ill. Rev. Stat. 1989, ch. 111$^{1}$/$_{2}$, par. 151.2 (now 210 ILCS 85/10.2 (West 1992))), and the Medical Practice Act of 1987 (Ill. Rev. Stat. 1989, ch. 111, par. 4400—5 (now 225 ILCS 60/5 (West 1992))) barred these claims. The court also dismissed with prejudice plaintiff's claim of intentional infliction of emotional harm (count IV). Plaintiff was allowed to replead a defamation claim based on any statements about plaintiff's competence made by Morelli outside the peer review process. Plaintiff was also allowed to replead count I to allege that defendants deviated from procedures in Gottlieb's bylaws in revoking plaintiff's privileges. The order did not specify that there was no just reason for delaying enforcement or appeal of the stricken portions.

On October 5, 1993, plaintiff filed a two-count third amended complaint. In count I, plaintiff alleged that Gottlieb breached its contract with plaintiff and violated its bylaws in terminating plaintiff's "employment/staff privileges." Plaintiff alleged that "said

contract of employment extended until at least October 1990, but was also to continue indefinitely, two years at a time." Plaintiff's exhibits included a letter from Gottlieb notifying him that his most recent reappointment extended until October 1990. Count II of the third amended complaint was a defamation count. It alleged that Morelli made false statements about plaintiff in May 1990 and for five years preceding May 1990.

Pursuant to a motion by defendants, the trial court dismissed with prejudice that portion of count I concerning an oral promise of lifetime privileges after October 1990, holding that it violated the Illinois Frauds Act. 740 ILCS 80/0.01 *et seq.* (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 59, par. 0.01 *et seq.*). The trial court also dismissed the defamation count, holding that it violated the one-year statute of limitations for defamation claims. 735 ILCS 5/13—201 (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 110, par. 13—201). The court's order, dated January 21, 1994, specified that there was no just reason for delaying enforcement or appeal of the stricken portions. The order also granted plaintiff leave to replead the remaining allegations in count I.

On February 16, 1994, plaintiff filed a fourth amended complaint. It alleged that defendants violated hospital bylaws in revoking plaintiff's privileges and terminating his employment prior to October 1990. The fourth amended complaint remains pending in the trial court.

On February 17, 1994, plaintiff filed a notice of appeal appealing from the trial court's order dismissing with prejudice certain portions of his third amended complaint (appeal No. 1—94—0657). On March 21, 1994, plaintiff moved to amend the trial court's September 22, 1993, order dismissing portions of plaintiff's second amended complaint. Specifically, plaintiff moved to make final and appealable the trial court's dismissal of the tortious interference with contract count, the intentional infliction of emotional harm count, and that portion of the defamation count concerning statements Morelli made to the board of directors. The trial court granted this motion and amended the order. On March 31, 1994, plaintiff filed a notice of appeal appealing from the trial court's amended order (appeal No. 1—94—1165). On May 10, 1994, plaintiff's appeals were consolidated.

Plaintiff's contentions on appeal can be summarized as follows: (1) defendants have failed to establish that they are statutorily immune from civil damages arising from the revocation of plaintiff's privileges; (2) the trial court improperly dismissed plaintiff's claims of intentional infliction of emotional harm and defamation arising from Morelli's conduct for five years preceding the revocation of

plaintiff's privileges; and (3) the trial court erred in dismissing plaintiff's allegations that he had a lifetime contract of two-year reappointments at Gottlieb. Initially, however, we must address defendants' argument that plaintiff waived review of each of the above issues when he elected to file his third and fourth amended complaints.

■ It is well established that a party who files an amended pleading waives any objection to the trial court's ruling on former complaints. *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill. 2d 150, 449 N.E.2d 125 (1983); *Du Page Aviation Corp. v. Du Page Airport Authority*, 229 Ill. App. 3d 793, 594 N.E.2d 1334 (1992). Where an amended complaint is complete in itself and does not refer to or adopt a prior pleading, the prior pleading ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn. *Foxcroft*, 96 Ill. 2d at 154, 449 N.E.2d at 126; *Du Page*, 229 Ill. App. 3d at 799, 594 N.E.2d at 1338.

The facts in *Du Page* are analogous to those here. In *Du Page*, as in this case, the plaintiffs filed a series of complaints. Counts I through IV of the plaintiffs' amended complaint were dismissed with prejudice, but two months later, the trial court granted in part the plaintiffs' motion to vacate the order. The court's new order modified the dismissal of count I to without prejudice, added language that its earlier dismissals of counts II, III, and IV were final and appealable under Supreme Court Rule 304(a) (134 Ill. 2d R. 304), and granted the plaintiffs leave to file a second amended complaint. The plaintiffs thereafter filed a second amended complaint and a timely notice of appeal as to the trial court's new order. The second amended complaint did not reallege or refer to counts II, III, and IV of the amended complaint. The second amended complaint was subsequently dismissed and the plaintiffs filed a timely notice of appeal as to that order. The two appeals were then consolidated.

On appeal, the defendant argued that the plaintiffs waived any objection to the trial court's treatment of the amended complaint by filing a second amended complaint. This court agreed, stating:

"Plaintiffs argue that they adequately preserved the dismissal of counts II, III and IV of their amended complaint by obtaining Rule 304(a) findings as to those counts from the trial court. We disagree. The import of *Foxcroft* is that plaintiffs in the instant case had two choices to preserve the counts at issue for appellate review. First, they could have elected to stand on the dismissed counts and argue such at the appellate level, *prior* to filing their second amended complaint. Alternatively, they could have realleged or preserved the dismissed counts in their second amended

complaint. Plaintiffs did neither and have therefore waived this court's consideration of the trial court's dismissal of counts II, III and IV of their amended complaint." (Emphasis in original.) *Du Page*, 229 Ill. App. 3d at 800, 594 N.E.2d at 1338.

■ The similarities between *Du Page* and the present case are compelling, and the court's reasoning is persuasive. Here, even though plaintiff, on March 21, 1994, obtained an amended order making final and appealable the trial court's dismissal of counts II, IV, and portions of count III of his second amended complaint, plaintiff waived his right to object to the trial court's ruling on those counts by filing, on October 5, 1993, a third amended complaint that did not reallege, refer to, incorporate, or preserve the stricken portions of his second amended complaint. Likewise, by filing on February 16, 1994, a fourth amended complaint that did not reallege, refer to, incorporate, or preserve the stricken portions of his third amended complaint, plaintiff waived review of the trial court's treatment of his third amended complaint, even though he filed a timely notice of appeal on February 17, 1994. We are not persuaded by plaintiff's argument that realleging the stricken portions would have violated the trial court's specific instructions on how to replead. A simple paragraph or footnote in the amended pleadings notifying defendants and the court that plaintiff was preserving the dismissed portions of his former complaints for appeal would have been sufficient to avoid the consequences of the *Foxcroft* rule. See, *e.g.*, *Saunders v. Michigan Avenue National Bank*, 278 Ill. App. 3d 307, 311-12 (1996).

Nevertheless, even if plaintiff had not waived his right to review of the issues on appeal, we find, in conducting a *de novo* review (*Moore v. Lumpkin*, 258 Ill. App. 3d 980, 630 N.E.2d 982 (1994)), that the trial court properly ruled on plaintiff's second and third amended complaints. As stated earlier, plaintiff first contends that defendants have not established statutory immunity from civil damages arising from their actions in revoking plaintiff's privileges. In response, defendants argue that under relevant statutes and cases, plaintiff's only judicial remedy for revocation of his privileges is an order compelling compliance with Gottlieb's bylaws, and that his fourth amended complaint pending in the trial court has made this claim.

In 1990, when plaintiff's privileges were revoked, section 10.2 of the Hospital Licensing Act stated as follows:

"§ 10.2. Because the candid and conscientious evaluation of clinical practices is essential to the provision of adequate hospital care, it is the policy of this State to encourage peer review by health care providers. Therefore, no hospital and no individual who is a member, agent, or employee of a hospital, hospital medi-

cal staff, hospital administrative staff, or hospital governing board shall be liable for civil damages as a result of the acts, omissions, decisions, or any other conduct of a medical utilization committee, medical review committee, patient care audit committee, medical care evaluation committee, quality review committee, credential committee, peer review committee, or any other committee whose purpose, directly or indirectly, is internal quality control *** or for improving patient care within a hospital *** or for the purpose of professional discipline." Ill. Rev. Stat. 1989, ch. 111$^{1}$/2, par. 151.2 (now 210 ILCS 85/10.2 (West 1992)).

Section 5 of the Medical Practice Act provided:

"§ 5. Because the candid and conscientious evaluation of clinical practices is essential to the provision of adequate health care, it is the policy of this State to encourage peer review by health care providers. Therefore, while serving upon any committee whose purpose, directly or indirectly, is internal quality control or medical study to reduce morbidity or mortality, or for improving patient care or physician services within a hospital *** or for the purpose of professional discipline, any person serving on such committee, and any person providing service to such committees, shall not be liable for civil damages as a result of their acts, omissions, decisions, or any other conduct in connection with their duties on such committees, except those involving wilful or wanton misconduct." Ill. Rev. Stat. 1989, ch. 111, par. 4400—5 (now 225 ILCS 60/5 (West 1992)).

Section 8—2101 of the Medical Studies Act stated:

"§ 8—2101. Information obtained. All information, interviews, reports, statements, memoranda or other data of *** health maintenance organizations and medical organizations under contract with health maintenance organizations, *** or committees of licensed or accredited hospitals or their medical staffs *** used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care, shall be privileged, strictly confidential and shall be used only for medical research, the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges, except that in any hospital proceeding to decide upon a physician's staff privileges, or in any judicial review thereof, the claim of confidentiality shall not be invoked to deny such physician access to or use of data upon which such a decision was based." Ill. Rev. Stat. 1989, ch. 110, par. 8—2101 (now 735 ILCS 5/8—2101 (West 1992)).

■ It is well settled by a long line of cases interpreting these statutes that a hospital or physician involved in the process of peer review or ensuring the quality of patient care which results in the re-

vocation of another physician's privileges by a peer review committee cannot be held liable for a claim of monetary damages brought by that terminated physician. See *Cardwell v. Rockford Memorial Hospital*, 136 Ill. 2d 271, 555 N.E.2d 6 (1990) (dismissing claims of slander, coercion, intentional infliction of emotional distress, and intentional interference with contract pursuant to section 10.2); *Carson v. Northwest Community Hospital*, 192 Ill. App. 3d 118, 548 N.E.2d 579 (1989) (dismissing tortious interference with contract count and antitrust claim under section 8—2101 of the Medical Studies Act and section 10.2 of the Hospital Licensing Act); *Knapp v. Palos Community Hospital*, 176 Ill. App. 3d 1012, 531 N.E.2d 989 (1988) (holding that based on all three of the above statutory provisions the trial court erred in entertaining a physician's claims of interference with contract, infliction of emotional distress, and unfair competition); *Gates v. Holy Cross Hospital*, 175 Ill. App. 3d 439, 446, 529 N.E.2d 1014, 1018 (1988) (stating that "hospitals and their staff are immune from civil liability for services rendered while serving in the capacity of a medical care evaluation committee or peer review committee"); *Rodriguez-Erdman v. Ravenswood Hospital Medical Center*, 163 Ill. App. 3d 464, 516 N.E.2d 731 (1987) (relying on the Medical Studies Act and the Hospital Licensing Act in dismissing a terminated physician's complaint for civil damages).

While each of the above statutory sections may differ, and one immunity may not necessarily apply in all situations in which another does (*Cardwell*, 136 Ill. 2d at 280-81, 555 N.E.2d at 10), these provisions reaffirm the well-settled rule in Illinois that only limited judicial review is proper in situations where a physician has lost his staff privileges. *Knapp*, 176 Ill. App. 3d at 1018-19, 531 N.E.2d at 993; see also *Carson*, 192 Ill. App. 3d at 122, 548 N.E.2d at 581. As stated in *Knapp*:

> "Illinois cases have repeatedly recognized that decisions of private hospitals respecting the termination or curtailment of existing privileges of physicians on their medical staffs are subject only to a limited judicial review whose purpose is merely to determine whether such decisions were rendered in compliance with the bylaws of the institution." *Knapp*, 176 Ill. App. 3d at 1018-19, 531 N.E.2d at 993.

This rule of limited judicial review is grounded in the idea that " '[j]udicial tribunals are not equipped to review the action of hospital authorities in selecting or refusing to appoint members of medical staffs.' " *Knapp*, 176 Ill. App. 3d at 1020, 531 N.E.2d at 994, quoting *Shulman v. Washington Hospital Center*, 222 F. Supp. 59, 64 (D.D.C. 1963). Another purpose behind the above provisions is to promote

participation in peer review in hospitals and to encourage candid, frank, open, and honest discussions in such situations by removing the fear of possible civil liability in connection with participation in peer review. *Knapp*, 176 Ill. App. 3d at 1022, 531 N.E.2d at 995; *Rodriguez-Erdman*, 163 Ill. App. 3d at 469, 516 N.E.2d at 734.

■ With these principles in mind, we turn to plaintiff's argument that defendants have failed to establish statutory immunity. Specifically, plaintiff focuses on Morelli's comments made to the board of directors and argues that he was not part of any committee contemplated by section 10.2 of the Hospital Licensing Act when he made those comments. Plaintiff also argues that Morelli is not immune under section 5 of the Medical Practice Act because he acted in a willful and wanton manner. We agree with defendants, however, that Morelli's statements to the board are privileged under section 8—2101. We also agree with defendants that their conduct was immunized by section 10.2 of the Hospital Licensing Act. Because of these conclusions, it is not necessary to consider whether the immunity provision in section 5 of the Medical Practice Act is applicable.

In *Jenkins v. Wu*, 102 Ill. 2d 468, 480, 468 N.E.2d 1162 (1984), the supreme court stated that the purpose of section 8—2101 "is to ensure the effectiveness of professional self-evaluation, by members of the medical profession, in the interest of improving the quality of health care," and absent the privilege granted by this section, physicians would be reluctant to "engage in frank evaluations of their colleagues." 102 Ill. 2d at 480, 468 N.E.2d at 1168. In the present case, Morelli's comments to the board asserting that plaintiff was incompetent and that he falsified records were "statements" made by a physician on the "medical staff" of an accredited hospital "used in the course of internal quality control" or "for improving patient care." Ill. Rev. Stat. 1989, ch. 110, par. 8—2101 (now 735 ILCS 5/8—2101 (West 1992)). Under section 2—101, these statements to the board were "privileged," and they cannot serve as plaintiff's basis for claims of intentional interference with contract, intentional infliction of emotional harm, or defamation against defendants.

We also note that defendants are immune from these claims under section 10.2 of the Hospital Licensing Act. Plaintiff argues that section 10.2 does not apply because Morelli's actions alone caused the revocation of plaintiff's privileges. Yet, plaintiff's pleadings reveal differently. The record contains letters received by plaintiff showing that no permanent action was taken until an *ad hoc* committee was formed to investigate Morelli's charges, that plaintiff was invited to participate in the *ad hoc* committee's investigation, and that a final

decision was not made until the board of governors received, accepted, and affirmed the recommendation of the medical executive committee. This review of the procedures followed is not meant to comment on whether Gottlieb complied with the procedures in its bylaws in terminating plaintiff. (That issue is not before us and will be determined by the trial court where plaintiff's fourth amended complaint remains pending.) Nevertheless, these letters reveal that plaintiff's termination was recommended by an *ad hoc* committee and did not result solely from Morelli's unilateral actions.

In light of these facts established by the record, plaintiff's reliance on *Szczerbaniuk v. Memorial Hospital*, 180 Ill. App. 3d 706, 536 N.E.2d 138 (1989), is misplaced. In *Szczerbaniuk*, summary judgment in favor of a hospital and a hospital administrator pursuant to section 10.2 was reversed because the record revealed that the plaintiff's termination resulted from the unilateral actions of the individual hospital administrator. The administrator (who apparently was not a physician) was "informally authorized" by the executive committee of the board of directors (whose members were never apprised of the specific allegations of sexual harassment against the plaintiff) to terminate the plaintiff without the formation of and evaluation by the type of committee contemplated by section 10.2 such as "peer review committees, credential committees and medical utilization committees." *Szczerbaniuk*, 180 Ill. App. 3d at 711, 536 N.E.2d at 141. The present case, however, is distinguishable from *Szczerbaniuk*. While Morelli's comments to the board may have prompted the investigation, the final decision was made by the board of governors after it reviewed the recommendation of the *ad hoc* committee. Under section 10.2, Morelli and Gottlieb cannot be held "liable for civil damages as a result of the acts, omissions, decisions, or any other conduct of a *** peer review committee, or any other committee whose purpose, directly or indirectly, is internal quality control." Ill. Rev. Stat. 1989, ch. 111$^{1}$/2, par. 151.2 (now 210 ILCS 85/10.2 (West 1992)). The trial court therefore properly dismissed from plaintiff's second amended complaint those allegations that, by and through Morelli's comments to the board, defendants intentionally interfered with plaintiff's contract, defamed plaintiff, or intentionally inflicted emotional harm on plaintiff.

We next turn to plaintiff's contention that the trial court improperly dismissed those allegations that Morelli, outside the quality review process, defamed plaintiff and intentionally inflicted emotional harm on plaintiff for five years up to and including May 1990. The trial court held that plaintiff's defamation claim based on these events was barred by the one-year statute of limitations period.

The court therefore dismissed count II of plaintiff's third amended complaint. The trial court also held that defendants' conduct was not so extreme and outrageous as to constitute intentional infliction of emotional harm and dismissed count IV of plaintiff's second amended complaint. We agree with these findings.

■ Pursuant to section 13—201 of the Code of Civil Procedure, "[a]ctions for slander, libel or for publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued." 735 ILCS 5/13—201 (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 110, par. 13—201). Here, although the defamation count in plaintiff's third amended complaint is currently at issue, plaintiff filed his original complaint alleging defamation on July 23, 1991. Nevertheless, the conduct plaintiff alleges purportedly happened for five years up to and including May 1990. Thus, as the trial court ruled, this claim is time-barred. We are not persuaded by plaintiff's argument that the statute of limitations was tolled by the discovery rule. *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 61 Ill. 2d 129, 334 N.E.2d 160 (1975). Based on the allegations in the defamation count at issue here, plaintiff was clearly aware or should have known of Morelli's conduct over the five years up to and including May 1990 by no later than May 1990.

■ We also reject plaintiff's assertion that count IV of plaintiff's second amended complaint has stated a claim of intentional infliction of emotional harm based on Morelli's conduct outside the peer review process. To state a claim for intentional infliction of emotional harm, a plaintiff must allege facts which establish (1) that the conduct was extreme and outrageous, (2) that the emotional distress suffered by the plaintiff was severe, and (3) that the conduct was such that the defendant knew that severe emotional harm or distress would be certain or substantially certain to result. *Harris v. First Federal Savings & Loan Ass'n*, 129 Ill. App. 3d 978, 473 N.E.2d 457 (1984). In *Public Finance Corp. v. Davis*, 66 Ill. 2d 85, 360 N.E.2d 765 (1976), the supreme court explained that this tort "clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions or trivialities" (66 Ill. 2d at 89-90, 360 N.E.2d at 767), and that " '[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency ***.' " 66 Ill. 2d at 90, 360 N.E.2d at 767, quoting Restatement (Second) of Torts § 46, Comment *d* (1965). "Although fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable." *Public Finance*, 66 Ill. 2d at 90, 360 N.E.2d at 767. " 'The law intervenes only where the distress inflicted

is so severe that no reasonable man could be expected to endure it.' " *Public Finance*, 66 Ill. 2d at 90, 360 N.E.2d at 767, quoting Restatement (Second) of Torts § 46, Comment *j* (1965).

■ In count IV of plaintiff's second amended complaint, plaintiff alleged that during the last five years of his employment, defendants engaged in outrageous conduct consisting of "falsely claiming *** that plaintiff is incompetent as an anesthesiologist"; falsely claiming that plaintiff "has not made truthful documentation on patient charts"; suggesting that plaintiff "seek further retraining for a one year period"; "revoking plaintiff's privileges"; and causing plaintiff to endure "constant berating [by Morelli] before the hospital staff." On appeal, plaintiff argues that he is not asserting this claim based on the loss of his job; he states that he is bringing this claim "in response to Defendant Morelli's five year campaign of harassment and intimidation against him." Nevertheless, we agree with the trial court that the allegations pled by plaintiff do not rise to the level of extreme and outrageous conduct and severe emotional distress described by the supreme court in *Public Finance* as necessary to bring such a cause of action. As defendants point out, this court has dismissed claims of intentional infliction of emotional distress in cases involving even more egregious allegations. See, *e.g., Layne v. Builders Plumbing Supply Co.*, 210 Ill. App. 3d 966, 569 N.E.2d 1104 (1991) (false police report filed by employer against plaintiff); *Khan v. American Airlines*, 266 Ill. App. 3d 726, 639 N.E.2d 210 (1994) (stolen airline ticket knowingly sold by defendant to plaintiff, causing him to be arrested, fingerprinted, and charged with theft while en route to his father's funeral). Accordingly, we affirm the trial court's dismissal of this count.

■ Thus far, we have affirmed the trial court's dismissal of plaintiff's claims of intentional interference with contract, defamation, and intentional infliction of emotional harm. We next turn to whether the trial court properly dismissed from plaintiff's third amended complaint those allegations that, in addition to being reappointed until October 1990, plaintiff had an oral contract for a lifetime of two-year reappointments at Gottlieb. We hold that this was proper for two reasons. First, the allegations were barred under the Illinois Frauds Act, which provides that a contract not able to be performed within one year must be in writing. 740 ILCS 80/0.01 *et seq.* (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 59, par. 0.01 *et seq.*). Here, plaintiff can point to no written contract or provision promising a lifetime of reappointments after October 1990. While it is true, as plaintiff argues, that partial performance can take an oral contract outside the statute of frauds (*Ladesic v. Servomation Corp.*, 140 Ill.

App. 3d 489, 488 N.E.2d 1355 (1986)), merely accepting past offers of two-year reappointments does not constitute partial performance. Moreover, as defendants note, plaintiff has failed to plead any additional detriment or consideration necessary to make enforceable this purported oral promise of permanent employment. See, *e.g.*, *Davies v. Martel Laboratory Services, Inc.*, 189 Ill. App. 3d 694, 545 N.E.2d 475 (1989) (where at-will employee was orally offered permanent employment if she studied and obtained an MBA).

Notwithstanding this statute of frauds analysis, plaintiff's allegations were properly stricken for a more basic reason. As stated earlier, it is well settled in Illinois under the rule of limited judicial review that when a physician's staff privileges are revoked by committee action, the terminated physician can, at most, file a complaint alleging that the hospital violated its own bylaws in reaching that decision. *Knapp*, 176 Ill. App. 3d at 1018-19, 531 N.E.2d at 993; *Gates*, 175 Ill. App. 3d at 446, 529 N.E.2d at 1018; *Rodriguez-Erdman*, 163 Ill. App. 3d at 470, 516 N.E.2d at 734-35. In the present case, what the trial court essentially did in ruling on plaintiff's various complaints was whittle plaintiff's action down to a claim that defendants failed to abide by Gottlieb's bylaws in terminating plaintiff's privileges. This is exactly the claim currently stated in plaintiff's fourth amended complaint now pending in the trial court.

Thus, for the reasons stated above, we affirm the trial court's treatment of plaintiff's second and third amended complaints. We hold that the trial court properly dismissed with prejudice plaintiff's claims of intentional interference with contract, defamation, and intentional infliction of emotional harm, and properly limited plaintiff's action to a claim that defendants failed to abide by Gottlieb's bylaws in permanently revoking plaintiff's staff privileges prior to October 1990.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

ZWICK, P.J., and EGAN, J., concur.